#### FOR THE

## COUNTY OF WASHINGTON.

### OCTOBER ADJOURNED TERM, 1848.

---

PRESENT,

Hon. STEPHEN ROYCE, CHIEF JUDGE,
Hon. ISAAC F. REDFIELD,
Hon. DANIEL KELLOGG, } ASSISTANT JUDGES.
Hon. CHARLES DAVIS,

---

OLIVE CARPENTER, by her next friend, JEREMIAH CARLTON, v. EB-
ENEZER DODGE, SPENCER DODGE, JOSEPH A. WING AND JABEZ
L. CARPENTER.

#### IN CHANCERY.

A gift is ineffectual, both in chancery and at law, without actual delivery of the
property ; and the principle is the same, whether it be a gift *inter vivos*, or a
*donatio causa mortis*.

A mere agreement to give, for the consideration of love and affection, whether
the gift is to be of goods and chattels, or a *chose in action*, neither transfers
the property to the donee, nor gives him a right, by suit, to compel a comple-
tion of the contract.

In this case the father of the oratrix, who was a married woman, sold a farm to
her husband, and received, as part of the consideration, a note for $400, pay-
able in ten years, without interest, and to be without interest until it should be
demanded, and promised the oratrix and her husband, that the whole amount

of the note should go as a gift, or advancement, to the oratrix; but he retained the note in his own possession, without assignment, label, deposit, or other indication, that it was definitely set apart and appropriated for the use and benefit of the daughter ; and it was held, that a court of chancery could not compel the father to give effect to the intended gift by relinquishing the contract of the note, and surrendering it to some person to hold in trust for the daughter.

APPEAL from the court of chancery. The substance of the bill, answers and testimony is fully stated in the opinion of the court. The court of chancery, November Term, 1847,—REDFIELD, Chancellor,—dismissed the bill ; from which decree the oratrix appealed.

*Peck & Colby,* for oratrix, cited *Souverbye* v. *Arden,* 1 Johns. Ch. R. 256; *Clavering* v. *Clavering,* 2 Vern. 473; *Boughton* v. *Boughton,* 1 Atk. 625; *Johnson* v. *Smith,* 1 Ves. 214; *Villiers* v. *Beaumont,* 1 Vern. 100; *Bale* v. *Newton,* Ib. 464; 2 P. Wms. 594; *Goring* v. *Nash,* 3 Atk. 186; *Newstead* v. *Searle,* 1 Atk. 265; *Vernon* v. *Vernon,* 2 P. Wms. 594.

*J. A. Wing,* for defendants.

The opinion of the court was delivered by

DAVIS, J. The oratrix is the wife of Jabez L. Carpenter and daughter of Ebenezer Dodge, defendants. She claims in the bill, that on the 11th of March, 1826, her father conveyed to her husband a farm in Marshfield, (Plainfield,) of the value of $1100 ; that one hundred dollars was paid down and six hundred dollars were to be paid in six equal annual instalments, with interest, for which six notes were executed ; that the remaining four hundred dollars was to be a gift, or advancement, to her, and was intended for her sole and exclusive benefit; that, to effect this object, it was agreed, upon mutual consultation, that her husband should execute to her father his other promissory note for that sum, not negotiable, payable in ten years thereafter, without interest, and not to be on interest, after it became due, until demanded; that this, as well as the other six notes, was to be secured by a mortgage of the farm ; and that the four hundred dollar note was to remain in her father's hands, and be held in trust for her. The object of all parties is alleged to have been, to place this fund in a situation, where, in case pecuniary misfortunes should overtake her husband, it would be beyond the

reach of him, or his creditors. The bill proceeds to say, that this arrangement was carried into effect, by making the conveyance and executing the notes and mortgage; and that her father, in pursuance of the understanding, continued to hold the large note in his hands, without any payment thereupon, until December, 1844, when, in violation of his trust, he, without consideration, transferred and delivered it to his son, Spencer Dodge, who now claims to own the same. It is farther alleged, that Joseph A. Wing, having claims against Spencer Dodge, caused two suits to be commenced against him, one returnable to the county court, the other before a justice of the peace, in both of which Jabez L. Carpenter was summoned as the trustee of Spencer Dodge, on account of said note; that said trustee filed his disclosures in the suits, setting forth fully the above facts, and insisting that he owed nothing to the principal debtor and ought not to be charged as his trustee; that in one of these actions the trustee having been adjudged liable, exceptions were allowed, and the case is now before the supreme court; and that the other case is still pending in the county court. The bill prays, that Wing may be perpetually enjoined from farther prosecuting either of his suits against the supposed trustee; and that Spencer Dodge may be decreed to surrender to the oratrix, or her friend, the note, and that Jabez L. Carpenter be enjoined from paying the same to Spencer Dodge, and for other relief.

The defendants, excepting Jabez L. Carpenter, who has interposed no defence, have answered separately. It is only necessary to notice the answer of Ebenezer Dodge, as his is the only one which professes to speak from actual knowledge of the real character of the trade between him and Jabez L. Carpenter. He denies explicitly any agreement to give his daughter the four hundred dollars comprised in the note of that amount; or that he was to hold the same in trust for her, in whole, or in part. He adds, that this note, like the others, was his own exclusive property, was to be collected ultimately like the others, and that it only differed from them in this, that it was taken without interest for ten years certain, and for such farther period of time, as he might let it lie without demand,—he intending to give to his daughter and her husband the use of that sum for that period, and for such farther time as he might think proper. In pursuance of this understanding he says he

retained the note in his own hands, without any demand, and with=
out any payment thereon, until October, 1840, being about four years
and a half after it became, by its terms, due and payable, that he then
demanded payment, but that, no payment being made, in 1842, on
account of love and affection, he assigned and transferred the note
absolutely to his son Spencer, to whom he had before given little, or
nothing.

All the answers were traversed, and testimony has been taken
and filed on both sides.   Counsel have mainly argued the case be-
fore us as a question of fact.

Among other testimony, filed and used in the case on the part of
the oratrix, is the disclosure of Jabez L. Carpenter, filed in one of
the suits, in which he was summoned as trustee, and on the part
of the defendants is the testimony of Ebenezer Dodge, given in the
same case.   This evidence seems to have been used by mutual con-
sent ; without which it would not have been admissible on either
side, at least not in respect of the main matter of controversy be-
tween Mrs. Carpenter and her father.   The statements of these two
witnesses are entirely irreconcilable, and, so far as uncorroborated
from other sources, completely neutralize each other.

It is evident, however, that Mr. Dodge's testimony as a witness
falls far short of sustaining the high ground assumed in his answer.
In the former he admits, that he meant to give to Carpenter's wife and
family $300, if they needed it, but that he did not intend that Carpen-
ter should have the control of it, and that he meant to keep it in his
own hands.   He admits, that Carpenter objected to the sum, insist-
ing that it should be $400, and says that finally he consented to
have the note made for $400,—but not with any intention of en-
larging the gift to Mrs. Carpenter.   It seems, that, at the same time
this trade was made, Mr. Dodge conveyed another farm to his son
J. Stanley Dodge, and took of him, in part of the agreed considera-
tion, a note of the same amount and tenor, with the one in question,
and secured by mortgage on the farm conveyed.   This note re-
mained unpaid in 1845, but whether it had been demanded, or not,
does not appear.   It is a coincidence, not unworthy of notice, that
in both cases Mr. Dodge, at the request of the mortgagors respect-
ively, had executed discharges of both mortgages, without any pay-
ments on the notes; and in the case of J. S. Dodge, had received

Carpenter *v.* Dodge et al.

another mortgage on other land.  In the present case he insists in his testimony, that the discharge was made at Carpenter's request, to enable him the better to sell the land, and that Carpenter agreed, in lieu thereof, to give him security on other land, which he had bought of one Pitkin.  This Carpenter denies; and it is agreed, that in fact no other mortgage was executed.

The deposition of J. Stanley Dodge tends strongly to show, that his father avowed his determination to give $400 to him, and $300 to his sister, that the mode of doing so in both cases was to be the same, by note without interest for ten years, and until demanded, and to be secured by mortgage, and this with the view of retaining control over the sums to be given, so that they could not be expended by himself, or Carpenter.  This last sum was finally enlarged to $400, in consequence of Carpenter's arguments and remonstrances.  The confessions of Mr. Dodge, made after these conveyances, as testified to by Ruth Sherman, James Pitkin and Coolidge Taylor, tend to confirm substantially the same version of the transaction.  Silas Williams' testimony, who drafted the papers for the parties, is still more explicit.  He asserts, that Mr Dodge declared the whole $400 to be a gift to Mrs. Carpenter, and was not to be collected, and that he directed the deponent to write the note, as it was written, in respect to interest, to meet the contingency of the note not being given up; and he adds, that it was covered by the mortgage at the suggestion of Carpenter.

There is no evidence of any importance upon the other side, except the answer and the testimony of Ebenezer Dodge, as given in the trustee suit, and these certainly, as already stated, do not harmonize well,—one denying absolutely any agreement, or understanding, to give the whole, or any part, of the $400 to his daughter, upon condition, or without condition; the other admitting a gift to the extent of $300, upon condition that she and her family should thereafter be in want or need of it.

Upon the whole, I have no hesitation in coming to the conclusion, that Mr. Dodge did give Mr. Carpenter to understand and expect, that the whole amount of the note should eventually go as a gift, or advancement, to the wife of the latter; and yet I am equally well satisfied, that he did not intend to place this fund beyond his own control, and, above all, that he did not intend Mr. Carpenter should

Carpenter *v.* Dodge et al.

immediately have the control of it. The whole arrangement clearly evinces this, and that both parties so understood it. The question then arises, can this bill be sustained, and the father be decreed to surrender the note, or otherwise give full effect to the intended gift, by relinquishing all discretion and control in reference to it? We are satisfied beyond a doubt, from a review of numerous authorities, that it cannot.

There is scarcely any principle more fully and uniformly sustained by authority, both in England and in the American States, than that a gift is ineffectual and incomplete, without actual *delivery of the* property,—and this in equity, as well as at law. The principle is the same, whether it be a gift *inter vivos,* as in the present case, or a *donatio causa mortis.* \ Acceptance is also implied in the delivery. A mere agreement to give, without consideration, or, what is no better, for the consideration of love and affection, whether it be of goods and chattels, or, as in this case, a *chose in action,* neither transfers the property to the donee, nor gives him a right, by suit, to compel a completion of the contract. It matters not, whether the agreement be unconditional, or otherwise. *Irons* v. *Smallpiece,* 2 B. & Ald. 551. This was a verbal gift of chattels.

In *Bunn* v. *Markham,* 7 Taunt. 224, India bonds, bank notes and guineas were sealed up and directed to the donee, but laid away, and kept in the donor's chest until his death. Here, though the gift was unconditional, it was adjudged to be ineffectual, for want of delivery. Drawing a check on one's banker, even if delivered, it seems, does not entitle the donee to the money, as a *donatio causa mortis,* unless presented and paid, or negotiated for value before the death of the donor. *Tate* v. *Hilbert,* 2 Ves. 111. The case of *Reddel* v. *Dobree,* 10 Sim. 244, is similar to that of *Bunn* v. *Markham,*—though a stronger one, inasmuch as the box, containing a check in favor of the donor, had passed back and forward several times between the donor and donee, and was in the possession of the latter at the death of the former. The key of the box still remained with the donor. A gift of money due on mortgage from a father to his daughter was held inoperative in equity, there being no delivery, except transferring the security from one drawer of a bureau to another. *Bryson* v. *Brownrigg,* 9 Ves. 1. In *Cotteen* v. *Missing,* 1 Madd. R. 176, it was held, that a letter, written to executors, ex-

Carpenter v. Dodge et al.

pressing consent that a certain sum in their hands should be given, was not sufficient, because not actually executed.

In all cases of this kind, however clearly and strongly the intention to give may be manifested, that intention is revocable, so long as the donor retains the custody and control of the property; and though it may be put into the form of a promissory note, it will make no difference. *Pearson* v. *Pearson*, 7 Johns. 26. This was rather a case of a note without consideration;—the maker being charged with having set fire to the payee's barn, gave the note to settle the matter. Neither had any idea of a gift. It was otherwise in *Fink* v. *Cox*, *Ex'r*, 18 Johns. 145, where a note was given by a father to his son for $1000, on account of love and affection. Not being paid in the life time of the father, it was determined, that it could not be recovered from the executor. In *Noble* v. *Smith et al.*, 2 Johns. 53, corn, standing and growing, was agreed to be given to the defendants, who were not in possession of the land. They afterwards entered without consent, and cut and carried away a quantity of the grain; for which the plaintiff recovered in an action of trespass *quare clausum fregit*. In *Cook* v. *Husted*, 12 Johns. 188, a slave child, at the time of its birth, was given by M. Pugsley, the owner, to her son Israel, whose property it was afterwards called in the family, though the slave continued with the mother. The plaintiff, who bought the slave of the mother, recovered compensation for its labor and services of the defendant, who derived title from the son.

The case of *Wright* v. *Ex'rs of Wright*, 1 Cow. 598, is almost identical with that of *Fink* v. *Cox*, *Ex'r*, except that the note was given from love and affection to a brother; but the decision was different; the court attempting to distinguish it from the other by saying, that the note was given expressly as a *donatio causa mortis*. In my apprehension, in the light of all the authorities, this circumstance would make no difference whatever. The only other case in New York, which appears to be in conflict with the general current of authorities, is that of *Grongiac* v. *Arden,* where a lottery ticket was purchased and given to the defendant's daughter, then eight years old, her name being written on the back of it, but it was never delivered; it was put away in the father's desk, but subsequently was lost. It drew a prize of $5000, which money was received by

76

the father, and invested in trade, with explicit declarations, that it was for his daughter's exclusive benefit. Ultimately he refused to account for the money, and she was allowed to recover the amount with interest. He had repeatedly, and in the most explicit terms, admitted, that he had given the ticket to her, that it was not his, that he would put the money in trade for her, averring that he would never take a shilling of it, or of the profit. The case was undoubtedly a very strong one in equity and justice, but is not attempted to be sustained by the court upon any other ground, than that the jury might well have inferred a delivery from the strong declarations made. The case presents a remarkable instance of a plain departure from well settled legal principles, under a pressure of strong considerations of natural equity.

In a few cases courts have, under particular circumstances, construed a symbolical delivery, or a delivery of a part for the whole, or a formal delivery, though the property again was returned to the donor, as satisfying the general leading principle every where recognized. *Crabb* v. *Crabb,* 1 Mylne & Keen 511. 4 Leigh 333. 1 Dow & Clark 1. But in general the delivery must be such as the thing is in its nature susceptible of. *Pennington* v. *Gittings,* 2 Gill & Johns. 208. *Bradley* v. *Hunt,* 5 Ib. 54. There is nothing in the present case, however, which places it within the operation of any admitted exceptions.

Whether regarded, as the weight of evidence requires us to regard it, as a prospective conditional gift, depending upon his own discretion thereafter,—or as an absolute, unconditional agreement to give the amount, but yet retaining the evidence and security of the thing in action, proposed to be given, within his own exclusive control, without assignment, label, deposit, or other mark, or indication that it was definitively set apart and appropriated for the use and benefit of his daughter, it is equally clear, upon principle and authority, that the father cannot be compelled to perfect the donation by decree. No question has been made as between the maker and payee of the note, as to the legal validity of it, and none could well be made under a case in this form, and between these parties; we therefore have no opinion in reference to it.

The result is, the decree of the chancellor is affirmed, with additional costs.