Dickman, J.
As appears from the original petition, the decedent, Henry Blandy, desiring in his life-time .to make provision for the support and maintenance of his daughter, the plaintiff in error, purchased and set apart as a gift to her, certain United States seven-thirty bonds of the par value of two thousand dollars, and bearing interest at the rate of six *112 per cent, per annum. These bonds were never delivered to the daughter. She never had manual possession of them, but by her request and his assent, they were left in the manual possession and under the dominion and control of the father for safe keeping. As her residence was distant from his home, he collected and transmitted to her the accruing interest down to the 1st day of April, 1866. About that time, he became interested in the Cashmere goat business, and being under the impression that an investment in that branch of business would be more profitable to his daughter than the ownership of the bonds, invested them in that business, but without consultation with her, and without her knowledge, authority or consent. After making the investment, and on the 19th day of April, 1866, by letter of that date to the plaintiff, stamped as a contract by his direction with a United States internal revenue stamp duly cancelled, the decedent promised and agreed to and with the plaintiff, that in case she did not elect to accept the investment in the proposed business in lieu of the bonds, he would l-etain the investment himself, and pay to her in place of the bonds the sum of two thousand dollars, with interest thereon from the 1st of April, 1866. The plaintiff accepted the offer and promise so made in writing, and having notified the decedent of her acceptance, he thereupon retained the investment as his own. It was upon the promise contained in the letter of April 19, 1866, that the original action was founded.
If the promise in writing by Henry Blandy to pay the two thousand dollars and interest, was not supported by a good and sufficient consideration, no right of action accrued to the plaintiff. It is contended, however, that such a consideration was furnished in the government bonds which the decedent invested in his business. The plaintiff claims that the transaction between her father and herself was no less than a valid gift of the bonds to her by him in his life-time. We think, however, that she acquired no title to or beneficial interest in the bonds, and that he was never divested of his absolute ownership therein.
*113 A gift inter vivos has been defined as an immediate, voluntary and gratuitous transfer of his personal property, by one to another. It is essential to its validity that the transfer be executed, for the reason that there being no consideration therefor, no action will lie to enforce it. A gift inter vivos has no reference to the future, but goes into immediate and absolute effect. To render the gift compléte, there must be an actual delivery of the chattel, so far as the subject is capable of such a delivery, and without such a delivery the title does not pass. If the subject be not capable of actual delivery, there must be some act equivalent to it. “ The necessity of delivery,” says Chancellor Kent, “has been maintained in every period of the English law.” The donor must part not only with the possession, but with the dominion and control of the property. An intention to give is not a gift, and so long as the gift is left incomplete, a court of equity will not interfere and give effect to it. Gray v. Barton, 55 N. Y. 68; Martin v. Funk, 75 N. Y. 134; 2 Kent. Com. 438; Noble v. Smith, 2 John. 52; Pearson v. Pearson, 7 John. 26; Grangiac v. Arden, 10 John. 293; Hooper v. Goodwin, 1 Swanst. 486; Picot v. Sanderson. 1 Dev. 309; Pennington v. Gittings, 2 Gill & Johns. 208; Gano v. Fisk, 43 Ohio St. 462. That the rights of creditors may not be prejudiced; that the donor may not be circumvented by fraud; that he may be protected from undue influence, which would result in an unequal and unjust distribution of his estate; that efficacy may not be given to donations made under legal incapacity, as well as on other grounds, gifts inter vivos, like gifts causa mortis, are watched with caution by the courts, and to support them clear and convincing evidence is required.
The record discloses that Henry Blandy, though he intended to give, never consummated a valid gift of the bonds to his daughter. They were in his possession, and under his dominion and control, until he invested them in the Cashmere goat business. They were property of such a nature that they were capable of actual delivery to his daughter *114 if he had seen fit so to deliver them. But he never delivered them to her, actually or otherwise, and when the occasion arose on which to use them in his business, he then, in the exercise of an absolute ownership, appropriated them without her knowledge, authority or consent. It is alleged that the bonds were left with him for safe keeping; but he was the custodian of property which the law regarded as his own, until for a valuable consideration, or by a perfected gift, he might conclude to divest himself of all title thereto. His acts indicate that he preferred to hold on to the bonds to meet any contingency which might necessitate him to use them, and not to place them irrevocably beyond his reach. His transmission of the accruing interest to his daughter might indicate an intention to donate the bonds themselves; but while the one may be incident to the other, the two are essentially separable and distinct, and a delivery of the one is not a delivery of the other. If before the decedent invested them in his business, the plaintiff had demanded possession of the bonds and been refused, she could have shown no consideration establishing a title whereby she might maintain an action, to recover either the bonds or their value in money. An agreement proved to set apart the bonds for her support and maintenance, would not have availed. An agreement to give for the consideration of love and affection, whether the gift is to be of goods and chattels or of a chose in action, neither transfers the property to the donee, nor secures him a right by suit to compel a completion of the contract. Carpenter v. Dodge, 20 Vt. 595.
The original petition contains an allegation that the bonds were a “gift” from the decedent. But it is further contended that there was not only a gift, but that the father constituted himself a trustee for his daughter. In this connection the language of the court in Young v. Young, 80 N. Y. 430, finds a direct application to the present case. “The transaction,” says Rapallo, J., in delivering the opinion of the court, “is sought to be sustained in two aspects. First, as an actual executed gift, and secondly, as a declaration of trust. These positions are antagonistic to each *115 other, for if a trust was created, the possession of the bonds and the legal title thereto, remained in the trustee. In that case there was no delivery to.the donee, and consequently no valid executed gift, while if there was a valid •gift, the possession and legal title must have been transferred to the donee, and no trust was created.” It is manifest that there was an inchoate gift of the bonds by the decedent which he never completed; but we find nothing that can be construed into a declaration that he held them in trust, or that he regarded himself as standing, in reference to the bonds, in a fiduciary relation to his daughter. If a gift is imperfect at law, and for want of consideration cannot therefore be enforced, a court of equity will not aid the donee by construing it into a declaration of trust. In Milroy v. Lord, 4 De Gex. F. & J. 264, in referring to the modes of making a voluntary settlement, the principle is announced that if the settlement is intended to take effect by transfer, the court will not hold the intended transfer to operate as a declaration of trust, for then every imperfect instrument would be made effectual by being convei’ted into a perfect trust. The owner of property that is meant to be donated, may at the last moment before delivering it change his mind, and in such case equity will not virtually divest him of his property by creating a trust in favor of a volunteer. By the' civil law, however absolutely a donation inter vivos might have been made, yet, if the object of the donor’s bounty proved ungrateful, he was permitted in certain specified cases, to revoke the donation. But by the common law, when the gift is perfect by delivery and acceptance, it is then irrevocable, and hence, until there is a final delivery of the subject, the donor will continue vested with the title.
The leading case on this point is Antrobus v. Smith, 12 Ves. Jr. 39, in which Gibbs Crawford made the following indorsement upon a receipt for one of the subscriptions in the Forth and Clyde Navigation: “ I do hereby assign to my daughter, Anna Crawford, all my right, title and interest of and in the inclosed call, and all other calls, of my subscription in the Clyde and Forth Navigation.” As this was *116 not a legal assignment, and was therefore without effect as a gift, it was argued that the father meant to make himself a trustee for his daughter of the shares. But Sir W. Grant, M. R., observed, “ Mr. Crawford was not otherwise a trustee than as any man may be called so who professes to give property by an instrument incapable of conveying it. He was not in form declared a trustee; nor was that mode of doing what he proposed in his contemplation. He meant a gift. He says he assigns the property. But it was a gift not complete. The property was not transferred by the act.' Could he himself have been compelled to give effect to the gift by making an assignment ? There is no case in which a party has been compelled to perfect a gift, which, in the mode of making it, he has left imperfect. There is locus penitential as long as it is incomplete.” In Jones v. Lock, Law Rep. 1 Ch. App. Cas. 25, a check for 900l. was put by the father into the hands of his child, signifying in strong terms his intent to give inpreesenti the check to the child. He subsequently took the check and locked it up, saying he should keep it for the child, and died the same day. A bill was brought in behalf of the child against his father’s representatives, to enforce his interest in the check as a trust. Lord Chancellor Cranworth said: “ This case turns on the very short question, whether the father intended to make a declaration that he held the property in trust for the child, and I cannot come to any other conclusion than that he did not. * * * It was all quite natural, but the father would have been very much surprised if he had been told that he had parted with the 900i., and could no longer dispose of it; and it was not his meaning to enable the child, by his next friend, to bring an action of trover for the note.”
It is obvious and well settled by authority that before the owner can be held as a trustee for the benefit of a mere volunteer, there must be a distinct, perfect and unequivocal declaration of trust. There should be an expression of an intention to become a trustee, not that the owner should use technical words or language, but he should declare in unmistakable terms that he means to stand in a fiduciary *117 relation to the object of his bounty. The record shows no such declaration by the decedent, and his acts were wholly inconsistent with the idea of making himself a trustee. There are no reasonable grounds for concluding that when he invested the bonds in his business without the knowledge of his daughter, he deemed himself as acting under a trust which he had assumed and declared. If in the alleged purchase and setting apart of the bonds as a gift to his daughter, and assenting to their being left in his custody, he had made use of words expressing a gift which was never perfected by delivery, such words would have shown an intention to give property over to another, and not to retain it in his, the donor’s, hands for any purpose, fiduciary or otherwise. Richards v. Delbridge, Law. Rep. 18 Eq. Cas. 11, 15. In the case last cited, Delbridge, who was possessed of leasehold business premises and stock in trade, purported to make a voluntary gift in favor of his grandson, E. B. Richards, -who was an infant, and assisted him in his business, by the followdng memorandum signed and indorsed on the lease: “ This deed and all thereto belonging I give to E. B. Richards from this time forth, with all the stock in trade.” The lease was then delivered to the mother of the grandson in his behalf. It was held by Sir G. Jessel, M. R., that there was no valid declaration of trust of the property in favor of the grandson. In the same line of decision are numerous other authoritative eases, but we deem it unnecessary to refer to them.
The court of common pleas and district court did not, in our opinion, err in sustaining the demurrer to the plaintiff’s petition, and the judgment of those courts should be affirmed.

Judgment accordingly.