# Charleston.

## A. W. B. AND WM. P. HOGUE *vs.* PATRICK BIERNE.

### January Term, 1871.

An action of covenant is brought on the following paper: "In consideration of the confidence I have in, and the regard I have for, my nephews, Andrew B. Hogue and William P. Hogue, I hereby give them one-fourth part of my personal estate, consisting of debts and money due me in my several mercantile concerns, as well as some private debts; requiring, however, of them, the said A. B. Hogue and Wm. P. Hogue, their attention and assistance with me in settling up, securing and collecting the debts, claims, &c., due and coming to me as aforesaid, &c. It is furthermore understood and agreed that in the event of the death of Andrew B. Hogue or William P. Hogue, then the survivor and myself are to have the sole management of his share, together with his own private estate inherited from his father and mother, for the benefit of his heirs.

"In witness whereof, the parties mentioned above bind themselves, their heirs, &c., for the due performance of the above arrangement, and have hereunto set their hands and seals this 7th day of January, 1848.

"P. BEIRNE.     [SEAL.]

"AND. W. B. HOGUE.

"WM. P. HOGUE."

And on demurrer it is HELD:

I. It is essential to a gift that it goes into effect at once and completely. If it regards the future it is but a promise; and being a promise without consideration it cannot be enforced, and has no legal validity.

II. A gift by deed is good between the parties, if it goes into effect at once, with delivery, for the delivery of the deed answers the place of the delivery of the property, when the property is capable of actual delivery.

III. The property given, or attempted to be given, was one undivided fourth part of certain choses in action. The most that the donees can be held to get under the deed is an equitable title to one un-

divided fourth part of the personal property mentioned in the deed, and it is, therefore, not within the jurisdiction of a court of law to give any remedy in the premises.

IV. If the first and second clauses of the deed be construed in connection so that the gift is to take effect when the money is collected on the various debts, then it ceases to be a gift and becomes an executory contract, which would be void for want of consideration, as well as want of mutuality.

V. *No action at law can be maintained on the paper.

This suit was entered in the circuit court of Greenbrier county, some time prior to 1859, but in consequence of the papers being lost, a new declaration was filed in January, 1869, and an amended declaration was filed in June following. The defendant's demurred to the declaration, which was sustained at the October term, following; the court being of opinion that no action could be maintained on the instrument of writing filed with the declaration.

The plaintiff brought the case here for review.

Hon. N. Harrison, Judge of the circuit court of Greenbrier county, presided on the trial of this case.

*Price* for the plaintiffs in error.

[As the assignment of errors contains a statement of the material features of the plaintiffs' claim, as also the basis on which Mr. Price founded their right. to recover, it is thought proper to insert it in this place.]

This is an action of covenant founded on an instrument of writing, signed, sealed, and executed by both parties, dated 7th of January, 1848. The instrument contains substantially these provisions, to wit:

In consideration of the confidence I, the defendant, have in and the regard I, the defendant, have for my nephews,

---

* *Obiter dictum.*—Judge Maxwell said, that if it were asked why the parties were dismissed without relief if they had acquired an equitable title to the property by the deed of gift, from the court of appeals of Virginia, on a bill filed in a suit to enforce the paper several years before, that a court of equity will not enforce a gift against a donor, nor will it enforce any other voluntary contract.

Andrew B. Hogue and William P. Hogue, I hereby give them one-fourth part of my personal estate, consisting of debts and money due me in my several mercantile concerns, as well as some private debts, requiring, however, of them, their attention and assistance with me in setting up, securing, and collecting the debts, claims, &c., due and coming to me as aforesaid. It is furthermore understood and agreed that in the event of the death of Andrew B. or William P. Hogue, the survivor and myself are to have the sole management of his share, together with his own private estate inherited from his father and mother, for the benefit of his heirs. The parties bound themselves, &c., for the due performance of the said arrangements.

The declaration set forth several branches of the covenant; the variations, however, consist mainly in the averments of performance of the covenants on the part of the plaintiffs, which it seems to have been thought were precedent to the defendant's liability. 1st. They averred that they did aid the defendant, and did at all times hold themselves in readiness to aid him in settling up and securing, &c.; 2d. That they did aid and assist the defendant in settling up, &c.; 3d. That they on their part did keep and perform the said covenants, that is to say, did aid and assist the defendant in settling up, &c., for a long space of time, to wit, for four years, and did hold themselves in readiness to aid and assist, &c., but were prohibited by the defendant; 4th. That they, the plaintiffs, were residing on their farm in Kanawha county, when the contract was made, and were induced by the covenant to remove to the town of Lewisburg, that they might live with the defendant, and be thus prepared to execute the covenant on their part, and did commence housekeeping with him, where they remained for a long space of time, to wit, for four years, during all of which time they did aid and tender their aid to the defendant in settling up, &c., and did continue to afford such aid until their aid and assistance were refused and rejected by the defendant; 5th. That they were always ready and willing on their part to do and perform all

things incumbent on them to perform by the said contract, but were prevented and prohibited by the defendant.

The breach on the part of defendant was similar in all the breaches set out, that is, that he failed and refused to give to the plaintiffs the one-fourth part of his personal estate, consisting of debts and money due him in his several mercantile concerns, as well as some private debts, &c.

The declaration containing all these breaches was demurred to, and the demurrer was sustained for reasons set forth in the order of the court. They are—first, the covenant is too vague and indefinite to sustain a suit either in equity or at law; second, the instrument, if good at all, is only valid as a gift *enter vivos*, and that it cannot be sustained as such a gift. Yet for any service rendered the plaintiffs on account of such covenant, they have their remedy either in assumpsit or case.

The plaintiffs in error maintain that neither view of the court is sound; that the contract is not too vague and indefinite to sustain a suit; that its meaning is simple, clearly expressed, and easily understood. It conveyed *one-fourth part* of his personal estate, consisting of debts and money due him in his several mercantile concerns, as well as some private debts. What is that one-fourth part worth, is the question; and this is a question of proof. If these parties had been partners on the terms of this contract, and the defendant had died, would the plaintiffs have lost their entire interest, because of the vagueness and indefiniteness of the contract? Could not a court ascertain by proof the value of one-fourth interest? For a court to hold the reverse of this is to stultify itself. The whole difficulty, if a difficulty there be, arises upon the proof. *Shirly* v. *Long*, 6 Rand., 636.

2. Is this a gift which can be withdrawn, or is it a contract for valuable consideration? A contract under seal is to be for valuable consideration. Powell on Contracts, page 200; Plowd., 309.

But here there is an express consideration. The plaintiffs were to assist in settling up, securing, and collecting the

debts, claims, &c.; not the one-fourth only, which they were to have, but the whole amount, the other three-fourths as well as the one-fourth. In many places where the defendant was interested in stores, a compensation of from fifteen to twenty-five per cent. for collecting would not have been excessive to any one; the business of collecting, after all the settlements were made, would be worth that sum. The bad debts and the good debts were both to be attended to. "Anything, however trifling, to be done by the plaintiffs' will be considerations sufficient whereon to ground an action." Powell on Contracts, 206. "A consideration may arise by doing or permitting somewhat to be done to the prejudice or loss of one of the parties." Powell on Contracts, 207. And here did not the plaintiffs sustain a loss? Did not they break up their business in Kanawha and move to Lewisburg? Were they not prejudiced by this, and did they not remain in Lewisburg for four long years, trying to execute the contract? Is not this consideration enough to sustain a contract? Are they to be forever tantalized with hope, and at last to be told that the contract is worth nothing to them?

*W. W. Gordon* for the defendant in error.

Before proceeding to consider the character of the instrument upon which this action is founded, and the nature of the relief (if any) to which the plaintiffs are entitled, the attention of the court is respectfully asked to the case of *Hogue* v. *Beirne*, decided fourteen years ago by the court of appeals of Virginia, at Lewisburg, the record of which case is now filed in the clerk's office of this honorable court. By reference to the record in that case it will appear, that the plaintiffs here filed their bill in the circuit court of Greenbrier, setting forth this instrument of writing, alleging that they had expended large sums in performing their part of this so-called agreement, in the execution of which they had been arrested by the defendant; and asking the court to render a decree for an account of the defendant's personal

estate, and that he be compelled to pay over one-fourth part of said estate to the plaintiffs, or make compensation in damages therefor; with prayer for general relief. The circuit court "dismissed the bill, without prejudice to any action at law which the plaintiffs might bring for damages." The court of appeals simply affirmed the decree, without giving any reasons therefor, in consequence of a difference of opinion amongst the judges as to the ground of their decree.

The present action of covenant was then brought upon this instrument, and we are now to enquire whether this action may be maintained.

The first question which presents itself is, whether this instrument is in fact a covenant, or simply a gift, executory in its character, and consequently not liable to be asserted in a court either of law or equity.

The meaning of this paper, like all others, must be gathered from its terms, and the evident intention of the party executing it. All the marks of a *contract* seem to be wanting. The grantor Beirne says, "I *give* to my two nephews." Here are no words indicating a contract *inter partes*. It is true that the word "gift" does not absolutely fix the character of the instrument, if there are other words which cannot be reasonably construed without changing its character; but it is the unquestionable rule of law that the words used in their ordinary acceptation show the intention of the parties, and should generally affix the real character to the paper. A man is supposed to give, or to loan, or to lease, or to contract, according to his use of the one or the other of these words.

But again, the reason of the gift is alleged: it is the "confidence he has in and the regard he has for his two nephews." It is not a contract in consideration of services to be performed, but a gift in consideration of his feelings towards his blood relations. This seems to be the natural and inevitable conclusion from the language used. It is true that in the next sentence are the terms upon which this gift is

to be consummated: the assistance of the Hogues was to be rendered in settling up the property out of which this bounty was to flow.   The gift was intended plainly to be upon a *good* consideration, not a *valuable* one; and the services to be performed a mere step by which the grantor should be enabled with certainty to carry out his charitable intention towards his nephews.

The Hogues sign the paper as an acceptance of the gift and an assent to its terms.   Had it been intended by either party as a contract, their names would most naturally have been embodied in the instrument.

If it be true then that this was merely a promise to give, a simple executory gift, is this the foundation of an action ? The books are filled with authority to the effect that a gift must be perfected by delivery, or it is void, and passes neither the right of property nor the right to sue. 42 N. H., 114; 33 Vt., 639; 23 N. Y., 69; 2 Grant, (Pa.) 157; 9 Ohio, (N. S.) 74; 25 Barb., 505; 31 Me., 338, 422; 7 B. Mon., 579; 2 Johns., 53, (Ch. Kent.)

In 7 Johns., 26, the court said, "a promise to give is revocable until delivery;" and so in 18 Johns., 149, in which the court further say that "natural love and affection are not sufficient to support such a promise." In 20 Vt., 600, the court say, "a mere agreement to give chattels or choses in action, without consideration, or what is no better, for natural love and affection, neither transfers property nor gives a right to sue to compel performance of the contract," and "however clear the intention to give, it is revocable so long as the donor controls the property."

Nor can it be said that the law in the case now under consideration is different, because the promise is under seal. In 35 Miss., 447, the court say, "however the rule may have been, it is now settled that delivery of possession is necessary to the validity of a gift, whether by parol or instrument of writing;" and "no distinction has been recognized between the gift of personalty by parol or by deed," and they cite as authority, 4 How., 216 (Ky.); *Id.*, 745; 7 S. & M., 428; 34,

Miss., 385, and Haley and Brown, not reported. The question is elaborately considered in this case, 35 Miss., 447, and the attention of the court is especially invited to its examination.

In 7 Smedes & Marshall, 428, there was a deed of personalty, yet the court held there must be delivery, though they further said in that case, that the execution and recordation of a deed with other circumstances might, perhaps, go to the jury as *evidence of delivery.*

So in 35 Ala., 628, where by sealed instrument, in consideration of natural love and affection, and for a nominal consideration of five dollars, there was a gift of money, without delivery, it was held not good as a gift *inter vivos.*

It seems unnecessary to add authority to show that the old common law inflexibility which attached to a man's scroll is no longer observed, in this country at least, so as to operate as a release from the necessity of making delivery essential to complete a gift, whether it be under seal or not. And, therefore, if we are right in construing the paper-writing under consideration to be a gift, it being executory in its character, no right can accrue to the plaintiff under it, by which they may, in the language of the court before cited, "sue to compel performance."

But whether this instrument be considered as an executory gift, or a contract *inter partes,* we respectfully urge that the case of *Hogue* v. *Beirne,* above referred to, is conclusive against the right to maintain the present action; not perhaps that the decree might be used as a plea in bar, inasmuch as it is without prejudice to any action at law for damages, but we mean that the principles necessarily decided in that case go to the very foundation of this action. If the plaintiffs were entitled to any relief *under this so-called contract,* their remedy was unmistakably in a court of equity, and they were very properly advised by their counsel to apply to that forum. It is the well settled rule of courts of equity that where there is ground for them to take jurisdiction, they will proceed to grant relief even where compensation should be had

in damages. 9 Cranch, 492. Now, nothing could be clearer than that a court of equity had jurisdiction of this case, if the plaintiffs were entitled to relief at all under this contract, and this upon two grounds. 1st. It provides for a partnership between the plaintiffs and the defendants. 2nd. To execute the contract, an account of the "several mercantile concerns," was absolutely essential, and the bill asked for an account. No better grounds of jurisdiction could have been urged upon a court of equity than these. From their very inception they have assumed almost exclusive jurisdiction of these two subjects, of partnerships and accounts. Indeed, their very existence well nigh grew out of the necessity for some machinery other than the jury trial, by which the complications growing out of partnerships and accounts might be unravelled. Although for reasons peculiar to its constitution, the chancery court might have refused to lend its aid to the plaintiffs to compel a specific performance; yet when the plaintiffs showed their right to be heard in that court by the indisputable necessity for an account, then the court must have gone on and administered relief if any could be proper under this contract. After the plaintiffs had brought themselves fully within the jurisdiction of the equity court by showing the necessity for an account, that court could not have dismissed their bill, thus refusing them all benefit of the contract, except by deciding that the contract was null and entitled them to no relief. Had the bill only asked for specific performance, it might possibly have been dismissed, as before intimated, upon the ground that the relations of the parties or the inadequacy of consideration did not justify the interference of a court of equity. But the court having jurisdiction upon other grounds, the plaintiffs had a right to compensation in damages, if they were entitled to anything under their contract; and the court of equity was peculiarly the proper forum for determining the question of damages. But it may be said on the other side, why did the court dismiss the bill "without prejudice to any action," &c., if they necessarily decided in dismissing the bill

that this action would not lie at law? The reason it seems to us is plain, viz: The bill in that suit, like the declaration in this, was a sort of drag net. The allegations in the one, like the counts in the other, were as various as the colors of Joseph's coat. Both allege, amongst other things, the great losses and costs to which the plaintiffs were put in their efforts to fulfill their part of the contract. If then the bill had simply been dismissed and an action of assumpsit had been brought afterwards by the plaintiffs on account of their costs and labor in settling up those mercantile concerns, the decree might have been pleaded in bar of the action, because the same subject matter was in issue (in part) in the chancery suit. The equity court, in order to preserve that right, dismissed the bill without prejudice, and turned the parties over to a court of law where their remedy was complete. For while, if the plaintiffs were entitled to recover anything *under the contract*, the necessity for an account would have entitled them to relief in equity, and the bill could not have been dismissed; yet if they were only entitled to recover for any costs incurred or labor expended in services to the defendant, then their remedy was complete in an action of assumpsit, and they were properly dismissed from the equity court "without prejudice" to any action at law which they might bring for damages, not in covenant, but in assumpsit. When those services were rendered, if ever, and whether barred by the statute of limitations or not, it was not the part of the court to enquire. They decided the law, and it was for counsel afterwards to determine the propriety of an action for those services.

But even if we are wrong in considering this instrument as an executory gift, and if the court of appeals have not already virtually decided that no recovery can be had thereon at law as well as in equity, yet there is another objection to this action which is fatal to its maintenance; the contract is too vague and uncertain to be the subject of an action, because no certain criterion is offered by which the damages for its breach may be ascertained. What is the measure of

damages under such a contract? If A agrees with B to build a house for 1,000 dollars, and fails to do so, the measure of damages for A's failure is of course not the value of the house if built, but the difference between that value and the 1,000 dollars. This is the extent of A's damage. So in this case; if the contract is in truth valid, and if Beirne has wholly and wrongfully failed to fulfill it on his part, the measure of damages would be, not the one-fourth part of his, B's, estate, but the difference between the value of that one-fourth and value of the services which the plaintiffs were to render. Now, would it be possible for a jury to estimate that difference correctly so as to do justice to the parties? Two elements enter into this measure of damages, viz: First, the value of the defendant's interests in his several mercantile concerns; and 2d, what would have been the value of the plaintiff's services in settling up those "concerns" had such services been rendered.

What a task is here assigned to a jury! A court of chancery, with the aid of learned commissioners and masters, and after laborious examinations, lasting most frequently for months, and often for years, is enabled to settle the transactions of a "mercantile concern," and the imperative necessity for its aid in these matters, as much as any other thing, gave birth to these courts; and yet a jury is called upon in this action to settle, not the transactions of one such concern, but "the several concerns," perhaps many in number; but its labors are not confined to this herculean, and, we may add, impossible task, but it is then to be called to wander amid the fields of speculation, and say how much would have been the value of services sufficient to "settle up" those several mercantile concerns had they been rendered by the plaintiffs. Such services, if properly performed, would probably take the balance of the lifetime of the plaintiffs.

The absurdity of a jury undertaking such a field of labor and of speculation combined, seems really to be monstrous. But for its actual existence in the present record, the bare

suggestion of offering such a case for adjudication in such a forum would seem to be ludicrous. No doubt, if this cause was sent back to be tried by a jury, they would undertake the task. They would decide, after a few hours or days examination, what they could not, with the aid of the best commissioners, properly decide in as many years. But where is the justice or the law in allowing any such proceeding? Is it not the duty of the court to hold as vague and indefinite a contract for which a jury cannot possibly arrive at any proper measure of damages? Or at all events, will it not hold that such a contract is not actionable in a court of law? The verdict of the jury upon such a trial could only be the wildest guess, upon loose and unsatisfactory evidence.

For these reasons, it is respectfully submitted that the court below did not err in sustaining the demurrer to the plaintiffs' declaration and giving judgment for the defendant.

MAXWELL, J. This was an action of covenant in the circuit court of Greenbrier county, brought by Andrew W. B. Hogue and William P. Hogue, against Patrick Beirne, on the following paper :

"In consideration of the confidence I have in, and the regard I have for, my nephews, Andrew W. B. Hogue and William P. Hogue, I hereby give them one-fourth part of my personal estate, consisting of debts and money, due me in my several mercantile concerns, as well as some private debts; requiring however of them, the said Andrew W. B. Hogue and William P. Hogue, their attention and assistance with me in settling up, securing and collecting the debts, claims, &c., due and coming to me as aforesaid, &c. It is furthermore understood and agreed that, in the event of the death of Andrew W. B. Hogue, or William P. Hogue, then the survivor and myself are to have the sole management of his share, together with his own private estate, inherited from his father and mother, for the benefit of his heirs.

In witness whereof, the parties mentioned above, bind themselves, their heirs, &c., for the due performance of the above

arrangement, and have hereunto set their hand and seals this 7th day of January, 1848.

"P. BEIRNE, [Seal.]

"AND. W. B. HOGUE, [Seal.]

"WM. P. HOGUE," [Seal.]

There was a demurrer to the declaration, and the question argued and presented for consideration is not, is the declaration good, but it is, can an action at law be maintained upon the paper?

It will be seen on inspection of the paper that it is a very peculiar one. The cause was argued here with unusual earnestness, and with great ability.

No case, either ancient or modern, has been cited involving the construction of any paper anything like this one, and since the argument, I have searched most diligently for one, but have failed to find it.

It was stated in argument, however, by the counsel for the plaintiffs in error, and admitted to be true by the counsel for the defendant in error, that the same plaintiffs heretofore filed their bill in equity against the same defendant to enforce specific execution of this supposed contract; that the bill was dismissed in the circuit court, but without prejudice to any suit at law which might be brought; that the case was taken to the court of appeals at Lewisburg, where the judgment of the court below was affirmed. I have not been able to find the manuscript record in the cause, but there is an order in one of the order books here, which shows that a decree in a suit between these parties, in favor of the defendant, was affirmed by the court of appeals of Virginia, all the judges being present. It was stated during the argument of this case by the counsel for the plaintiffs in error, that no opinion of the court was given when that appeal was decided, for the reason that no two of the judges had the same reason for affirming the decree. These facts are not mentioned to have any influence on the result of the case now under consideration, but to indicate the difficulty that surrounds this paper.

The paper sued upon is a deed. The first clause of it is. intended to be a deed of gift. The second clause is an independent covenant in relation to the property intended to be given by the first clause, but dependant for its vitality on the validity of the gift in the first clause. The third clause is also an independant covenant in relation to the property intended to be given by the first clause, and some other property, but as it was not intended to take effect until after the death of one of the parties, it is not involved in this suit. The controversy in this case turns entirely on the construction to be given to the first clause in the deed.

The language of the first clause is: "In consideration of the confidence I have in, and the regard I have for, my nephews, Andrew W. B. Hogue and William P. Hogue, I hereby give them one-fourth part of my personal estate, consisting of debts and money, due me in my several mercantile concerns, as well as some private debts." It is essential to a gift, that it goes into effect at once and completely. If it regards the future, it is but a promise; and being a promise without consideration, it cannot be enforced and has no legal validity. 1 Parsons on Contracts, p. 234.

Delivery, actual or constructive, is essential to the validity of every gift. *Ib.*, p. 234–5.

A gift by deed is good between the parties if it goes into effect at once, without delivery, for the delivery of the deed answers the place of the delivery of the property, when the property is capable of actual delivery. 2 Rob. Prac., (new) 490; *Ewing* v. *Ewing*, 2 Leigh, 337; *Irons* v. *Smallpiece*, 2 Barn. & Ald., 552; *Brown* v. *Markham*, 7 Taunton, 224; 2 Eng. Com. L. Reports, 81; 2 Kent, 437; *Hansom*, &c., v. *State, use Roby*, 9 Gill, (Ind.,) 440; *Butler* v. *Scofield*, 4 Marshall, 139; *Dale* v. *Lincoln*, 31 Maine, 422.

The property mentioned in the deed is one-fourth part of certain personal estate, consisting of debts and money due the donor in several mercantile concerns, as well as some private debts. In other words, the property given, or attempted to be given, was one undivided fourth-part of cer-

tain choses in action. The most that the donees can be held to get under the deed, is an equitable title to one-undivided fourth-part of the personal property mentioned in the deed, and it is, therefore, not within the jurisdiction of a court of law to give any remedy in the premises.

It is maintained, however, that the first clause of the deed is to be construed in connection with the second clause, and that the gift is to take effect when the money is collected on the various debts respectively. If this construction be the correct one, then it ceases to be a gift, and becomes an executory contract, which would be void for want of consideration as well as want of mutuality.

But the question will probably be asked, if the plaintiffs acquired an equitable title by the deed of gift to the property therein named, why was it that they were turned out of the court of appeals of Virginia without relief?

The answer is, that a court of equity will not enforce a gift against a donor, nor will it enforce any other voluntary contract. 1 Parsons on Cont., p. 234–5; 1 Story's Eq. Jur., § 433; *Antrobus* v. *Smith*, 12 Vesey, 39.

As no action at law can be maintained on the paper in question, the judgment of the court below, sustaining the demurrer to the declaration, was right, and should be affirmed with damages and costs.

Berkshire, President, and Moore, J., concurred.

JUDGMENT AFFIRMED.