J. F. SATTES, JR., *et al v.* SALLIE K. SATTES *et al.*

(No. 7425.)

Submitted February 15, 1933. Decided February 28, 1933.

(Rehearing denied June 1, 1933)

*J. Howard Hundley* and *A. J. Barnhart,* for appellants.
*Henry S. Cato,* for appellees.

MAXWELL, PRESIDENT:

This is a suit for partition of land.

John K. Sattes died intestate in the year 1890, seized and possessed of a tract of 72 acres of land on Coal River in Kanawha County. He was survived by three sons, John C., Henry V., and James F. In 1896 the land, assessed for taxation in the name of John K. Sattes Estate, was returned delinquent for non-payment of taxes, and in December, 1897, was sold by the sheriff of Kanawha County to E. C. Colcord, for $149.65, being inclusive of taxes, interest and costs. On the 16th of March, 1901, Colcord received a deed for said property from the clerk of the county court of said county. On the 20th of March, 1901, Colcord and wife conveyed the said land, excepting a certain strip thereof involved in a condemnation proceeding instituted against the Sattes heirs by the Coal River Boom & Timber Company, to Cora H. Sattes, wife of John C. Sattes, for a recited consideration of $463.78 evidenced by a note executed by the purchaser and certain sureties for her. Though the deed does not define the excepted strip, it makes reference to the condemnation proceeding, and such reference discloses that the strip contained 5.48 acres. By deed dated August 16, 1902, Cora H. Sattes and her husband, John C. Sattes, conveyed 30 acres of the 72-acre tract to James S. Sattes for ''one dollar cash in hand paid and other valuable considerations.'' Cora died testate December

31, 1903. She devised and bequeathed all of her estate, both real and personal, to her husband, John C.

The second wife of John C. Sattes was Katherine Gall Sattes. John died intestate August 31, 1910, survived by his widow, Katherine, and by seven children, namely, John F., Jr., Joseph H., Charles I., Maggie Burns, John Chris Sattes, Lillian Jordan and Cora Burns. By deed of March 28, 1916, Cora Burns and her husband conveyed her undivided one-seventh interest in and to the land herein in controversy to Sallie K. Sattes, daughter of the above mentioned Henry V. Sattes.

By deed of October 28, 1919, the said John Chris Sattes conveyed his undivided one-seventh of the land in controversy to Hattie Nurnberger and J. S. Nurnberger, and by deed of March 31, 1920, the said Lillian Jordan and her husband conveyed her undivided one-seventh interest to the said Nurnbergers.

The above mentioned James F. Sattes (Senior) is not involved in this proceeding nor is he a party hereto.

The said Henry V. Sattes died intestate January 14, 1911, survived by his widow, Lillian C., a son, William H., and two daughters, Sallie K. and Mary Sattes Winkler. William H. died intestate, unmarried and without issue, May 12, 1919.

The plaintiffs in this suit are James F. Sattes, Jr., and J. S. Nurnberger. The orignal defendants were Charles I. Sattes, Joseph H. Sattes, Maggie Burns, Hattie Nurnberger, Sallie K. Sattes and Katherine Gall Sattes, widow. The purpose of the suit is to partition among the heirs of John C. Sattes, and the grantees of those who have sold their interests therein, the land of which it is alleged by the bill that John C. Sattes died seized, excepting a portion thereof known as "Lower Falls Beach" which, it is alleged, should be held in common. This land is referred to as 42 acres, being the acreage remaining vested in Cora H. Sattes after she and her husband had conveyed to James F. Sattes, Sr., 30 acres out of the 72-acre tract. The reference to said residue as 42 acres is not correct, because that leaves out of account the fact that in the above mentioned conveyance of Colcord to Cora H. Sattes there is excepted 5.48 acres involved in the condem-

nation suit instituted by the Boom & Timber Company against the John K. Sattes heirs.

Sallie K. Sattes was made a party defendant to the bill because of the interest she had acquired by purchase of Cora Burns. The plaintiffs allege that, subject to the dower of Katherine Gall Sattes, theretofore assigned to her, the land of which John C. Sattes died seized should be partitioned among the parties to the suit in the following proportions: James F. Sattes, Jr., Charles I. Sattes, Joseph H. Sattes, Maggie Burns and Sallie K. Sattes, each an undivided one-seventh and to J. S. Nurnberger and Hattie Nurnberger jointly an undivided two-sevenths.

Sallie K. Sattes answered the bill and admitted that she had purchased an undivided one-seventh of Cora Burns, but denied that the parties in suit were entitled to partition in the proportions averred in the bill. She set up affirmative matters in her answer and prayed relief based thereon. From a decree sustaining the prayer of her cross-bill answer, the plaintiffs appeal.

Sallie alleges that in April, 1890, within a few weeks after the death of her grandfather, John K. Sattes, his three sons, John C., Henry V. and James F., entered into a parol agreement for partition of the land of which their father died seized and possessed; that by said agreement, Henry was to take three and one-half acres, including a dwelling, a mill and other improvements, fronting on Coal River, and that John and James were to take the residue of the land; that it was estimated that the three and one-half acres with improvements thereon was of about one-third the value of the whole tract; that the deed made thereafter in 1902 to James by John and his wife, Cora, after she had acquired the tax title of E. C. Colcord, was in recognition of the alleged parol partition; that the said partition still holds and that the heirs of John C. on the one hand and of Henry V. on the other are bound thereby; that Henry's widow and heirs are entitled to have the three and one-half acres portion set aside to them and that the residue, excluding the 30 acres which had been conveyed to James, and excluding "Lower Falls Beach," is subject to be partitioned among the heirs of John C. and their assigns, subject to the assignment of dower which has heretofore been made

to John C.'s widow, Katherine. On motion of Sallie, her mother, Lillian C., and her sister, Mary Winkler, were made parties defendant to the suit. They voluntarily appeared and adopted the cross-bill answer of Sallie.

Sallie and her mother and sister also take the position that the purchase of E. C. Colcord of the tax title in March, 1901, by Cora H. Sattes, wife of John C. Sattes, was, in effect, a redemption by her for the benefit of the John K. Sattes estate; that, after eliminating the 30 acres conveyed by Cora and John C. to James F., Sr., in 1902, it must be held as a matter of law that Cora and her devisee (husband), John C., held the legal title for the benefit of both Henry V. and John C., and, therefore, if the alleged parol partition cannot be upheld, it follows that the court should hold that the land is now owned in equal moities by the estate of John C. and Henry V., respectively, and that partition should be made on that basis.

As to the alleged parol partition, the evidence relied upon by Sallie K. Sattes, her mother and sister to establish the same, is, in our opinion, wholly inadequate. The testimony of Sallie's mother, Lillian C. Sattes, that she heard the parol agreement entered into between her husband Henry V. Sattes, and his brother, John C. Sattes, is incompetent under the statute. No party to a suit, nor any person interested in the event thereof, shall give evidence in regard to any personal transaction between such witness and a person at the time of such examination, deceased, insane or lunatic, against the executor, administratrix, heirs at law, next of kin, assignees, legatee, devisee or survivor of such person, or the assignee or committee of such insane person or lunatic. Code 1931, 57-3-1. John C. Sattes died prior to the death of his brother, Henry V. Following John C.'s death, his brother, Henry V., could not have testified with reference to the alleged parol partition. The express terms of the statute would have forbidden such testimony. Neither could Henry's wife, Lillian C., have given such testimony. "If a husband or wife is incompetent, by virtue of sec. 23, ch. 130, Code (1906), (Code 1931, 57-3-1), to testify to personal transactions or communications had between the witness and a decedent, the other consort is also incompetent." *Freeman* v. *Freeman*, 71 W. Va. 303, 76 S. E.

657. The testimony of Lillian C. which would have been incompetent following the death of John C. and prior to the death of her husband, Henry V., was, of course, not rendered competent by the death of her husband.

The only other testimony bearing on the alleged parol partition is that of Sallie K. Sattes and her sister, Mrs. Winkler. They testify that in 1911, their brother, William, obtained the services of a surveyor, John C. Rogers, to survey and make a plat of the three and one-half acre portion now claimed by the said two witnesses and their mother. They produced a plat and description of this parcel, said to have been made by Rogers at the time of the survey in 1911, kept by William Sattes among his papers until his death, and since then in the custody of William's mother and her counsel. It is testified that on the day the said survey was made by John C. Rogers and William Sattes there were present Charles I. Sattes and John Chris Sattes, sons of John C. Sattes. There is no further testimony on the alleged parol partition; therefore, we say that it was not proved.

Let us now consider the contention that the purchase by Cora H. Sattes of E. C. Colcord in 1901 was in legal effect a redemption by her of the forfeited tax title for the benefit of the John K. Sattes estate. In order fully to consider this contention it is necessary to recite further facts. On the 16th of January, 1894, there was entered in the circuit court of Kanawha County in the condemnation case of Coal River Boom & Timber Company v. Henry V., John C. and James F. Sattes, an order confirming a report of commissioners fixing the amount of damages to be paid the land owners at $1,000.00. In April, of the same year, orders were entered in said court dismissing three damage suits therein pending wherein the said land owners were plaintiffs and the said Boom Company and two other companies were the respective defendants. The record does not disclose when or how the $1,000.00 damages was paid. On July 19, 1902, Cora H. Sattes and her husband, John C., conveyed to the above mentioned E. C. Colcord one and one-third acres of the land in question for one dollar and other consideration. Two days later, Colcord executed a release of the vendor's lien reserved by him in deed of himself and wife to Cora under date of

March 20, 1901. On the 16th of August, 1902, Cora and her husband conveyed to his brother, John F. Sattes, Sr., the 30 acres above mentioned. From these facts it is argued that substantially more than John C. Sattes' share of the $1,000.00 damages must have been applied in payment of the consideration passing from Cora H. Sattes to Colcord by reason of the conveyance by him to her in March, 1901. We do not think that the inference thus drawn amounts to more than a suspicion. The release of the vendor's lien by Colcord on July 21, 1902, two days after Cora and husband had conveyed to him an additional one and one-third acres of land, may have been a coincidence merely, or it may have come about as a result of that conveyance, and have had no connection with the $1,000.00 damages provided for in the court order of January 16, 1894. As to the pleadings on this point, it should be remarked that whereas Sallie alleges that the consideration paid by Cora to Colcord came out of the damage money, the plaintiffs reply that Cora paid the said purchase money out of her individual funds. Evidence is wholly lacking to throw further light upon this phase of the case.

The three and one-half acres claimed by the Henry V. Sattes widow and daughters was never separately fenced, nor was it separately assessed for taxation. The whole tract, inclusive of the three and one-half acres, has for many years been assessed to the John C. Sattes estate. The record does not satisfactorily disclose that Henry V. Sattes or his family have ever paid any appreciable amount of taxes on any of this property except that for the last year or two, out of funds derived from a lease executed in 1931 for a portion of ground fronting on the river, known as "Lower Falls Beach," the taxes on the whole property have been paid. A dwelling house on the three and one-half acres has been occupied by the Henry V. Sattes family since 1873. Katherine Gall Sattes, widow of John C., occupies his old homestead, being another house on the 42 acre tract, the same having been assigned to her in a suit brought for that purpose in August, 1916. In that suit, Sallie K. Sattes and the heirs of John C. Sattes, other than Sallie's grantor, Cora Burns, were plaintiffs, and Katherine Gall Sattes was defendant. In the bill in that case it was alleged, *inter alia*:

"That the said tract of forty (40) acres, residue of the said seventy-two (72) acre tract, and the said eight (8) acre tract of land, passed by inheritance, to the children of the said John C. Sattes, subject to the dower interest therein of his widow, the said Katherine G. Sattes, and is now held and owned by them as his heirs at law, except however, that by deed dated March 28th, 1916, duly recorded in said Clerk's Office in Deed Book 158, at page 318, the said Cora S. Burns and E. S. Burns, her husband, conveyed to the said Sallie K. Sattes, one of the Plaintiffs, the undivided one-seventh interest in the said forty (40) acres, designated as the Lower Falls Tract, but reserving to the said Cora S. Burns, one-half of all minerals in the said undivided interest so conveyed with the rights incident to the ownership of the said undivided interest in said minerals, whereby the said Sallie K. Sattes became and now is a tenant in common with the other heirs of the said John C. Sattes, in the said Lower Falls Tract of forty (40) acres, in accordance with the terms and provisions of the said deed."

Sallie stated on direct examination in her testimony in this case that she brought the said suit of 1916 for the purpose of having dower assigned to Katherine Gall Sattes. It will be noted that the allegations of the bill in that suit are wholly inconsistent with the position which she takes in the instant suit. This is very strong evidence that at the time of the prosecution of that suit Sallie and her mother and sister were not making claim to an interest in the land on the basis either of a parol partition or of a redemption having been made by Cora H. Sattes for the benefit of the John K. Sattes estate. In the instant case, Sallie makes no effort in either pleading or testimony to offer explanation of the position taken by her in the 1916 suit or to reconcile that position with the one she now takes.

Even if it be considered that the acquisition by Cora H. Sattes in 1901 of the tax title from E. C. Colcord was in fact a redemption for the benefit of John C., Henry V. and James F. Sattes, it does not follow that the widow and heirs of Henry V. may now claim the benefit of such redemption. It is settled law in this jurisdiction that where a cotenant or his heirs are entitled to claim the benefit of a redemption made by one

of the cotenants or his spouse, such position must be asserted with reasonable promptness and a proportionate part of the burdens must be assumed. *Abbott* v. *Williams,* 74 W. Va. 652, 82 S. E. 1097; *James* v. *James,* 77 W. Va. 229, 87 S. E. 364; and *Smith* v. *Casto,* 107 W. Va. 1, 148 S. E. 566. Henry V. Sattes lived about ten years after Cora obtained the tax title deed from Colcord, but the record does not disclose that Henry ever made any claim under that deed on the basis of redemption or otherwise, or that he ever assumed any of the burdens. It may be significant that at that time there were unreleased judgments standing of record against him. Nor was any claim to the land asserted by Henry's widow and heirs until 1923, when a suit was instituted by Joseph H. Sattes and others to partition the land of which John C. Sattes died seized. In a cross-bill answer filed in that suit, Sallie set up the same matters upon which she relies in the present suit. A special replication was filed by the plaintiffs. Thereafter, the suit was abandoned. During the period of twenty-two years which elapsed from the acquisition of the tax title by Cora and the raising of the question of redemption by Sallie in the 1923 partition suit, no appreciable amount of the burden of taxation was borne by Henry or his family. Within that period there was prosecuted to completion the above mentioned suit to assign dower to Katherine Gall Sattes, widow of John C. Sattes, in which suit Sallie took a position wholly inconsistent with that which is asserted by her and her mother and sister at this time. Also, within that period, J. S. Nurnberger and Hattie Nurnberger purchased the two undivided one-seventh interest of John Chris Sattes and his sister, Lillian Jordan. The Nurnbergers are mother and son, respectively. They are related to the Sattes family. Mrs. Nurnberger has known the property for a half century, and her son has known it since his childhood. Though they lived in that vicinity, he says that he never heard that Sallie K. claimed any interest other than the one-seventh which she purchased of Cora Burns until the cross-bill answer was filed in the partition suit of 1923. No question on that point was propounded to Mrs. Hattie Nurnberger, but she does say that she never heard of the John C. Rogers survey and plat of the three and one-half acre portion until they were testified about by Sallie and her sister

in the instant suit. By reason of their relationship with the Sattes family and their knowledge of the property, it would seem that if any claim to the land was being made by the Henry V. Sattes family, the Nurnbergers would have known about it.

It is not necessary for us to decide whether Henry V. Sattes might have maintained the position that the tax title purchase by Cora H. Sattes was in legal effect a redemption for the benefit of John C. Sattes and Henry V. Sattes, but, if it be assumed and considered that such position might have been maintained if asserted within proper time, we are clearly of opinion that the right to take that position was forfeited by Henry V. Sattes, his widow and heirs by reason of the facts which we have recited.

Therefore, being unable to establish satisfactory background for the distinguished trial chancellor's decree, we reverse the same and remand the cause to the circuit court for further proceedings not at variance herewith.

*Reversed and remanded.*