D. C. TOMKIES

*v.*

CHARLES ELBERT TOMKIES, *Admr., etc., et. al*

*and*

THE NATIONAL BANK OF SUMMERS, *etc.*

(No. 13143)

Decided June 17, 1975.

*Carney M. Layne, Harold B. Eagle* for appellant.

*Frederick W. Sawyers* for appellees.

HADEN, CHIEF JUSTICE:

This is an appeal by D. C. Tomkies from a final order of the Circuit Court of Summers County denying appellant's claim, asserted as a beneficiary of the estate of Toney C. Tomkies, deceased, that 245 shares of capital stock in The National Bank of Summers, registered in the decedent's name, was the property of the decedent at his death and an asset of his estate. The order appealed from held that the stock in question had been the subject of an *inter vivos* gift transferred by Toney Tomkies to the appellees, Sarah Frances Blethen, Clara Elizabeth McKeever, Charles E. Tomkies and Frank C. Tomkies, the children of a deceased brother, Frank H. Tomkies.

The overriding issue of the case is whether the evidence supports the trial court's ruling that the bank stock was the subject of a valid *inter vivos* gift.

Toney C. Tomkies died intestate on February 6, 1967, leaving as his surviving heirs, a brother, D. C. Tomkies, the appellant, two sisters, Naomi Senerad and Frances

Rogers, and the four previously named children of the deceased brother, Frank H. Tomkies, appellees. At his death, the decedent was the record owner of 245 shares of stock in The National Bank of Summers, as reflected by four separate stock certificates issued by the Bank at different times in 1956 and 1963. Documentary evidence revealed that the endorsement clause on each certificate contained the signature of Toney Tomkies and the appellees' names, indicative of an assignment to the appellees. Three of the purported assignments, representing 161 shares, had been executed in the presence of Frank H. Tomkies and were dated in 1960 and 1964. The fourth, representing 84 shares, had been witnessed by Harry S. Blethen, Jr., the then husband of Sarah Blethen, in 1959.

Shortly after Toney Tomkies' death, his estate appraisers included the bank stock in the list of assets of the decedent's estate. Thereafter, however, the administrator took the position, ultimately sustained by the trial court, that the stock had been the subject of a valid *inter vivos* gift and was, therefore, not a part of the estate. Then, at the direction of the administrator, the issuing bank effected a record transfer of the stock shares from decedent's name to the names of the individual appellees. The appellant excepted to the removal of the stock from the assets of the estate, but the commissioner of accounts, to whom the estate had been referred, refused to assume jurisdiction to adjudicate the dispute. Quite properly, the county court later sustained the commissioner's position that the probate arm of the county court was not a proper forum to determine ownership of stock. *See, In Re: Long's Estate,* 122 W. Va. 473, 10 S.E.2d 791 (1940). In order to save the point, D. C. Tomkies appealed the decision of the county court to the circuit court and, also, contemporaneously instituted an independent civil action demanding a judicial determination as to the true ownership of the disputed shares. The trial court consolidated the appeal and the civil action, took evidence, and then rendered the decision assailed as erroneous here.

At trial, the appellant introduced uncontroverted evidence that the stock certificates remained in the record ownership of Toney Tomkies from the date of issuance until subsequent to his death in February 1967; that the decedent was the payee of bank drafts which represented all of the dividends paid on these shares of stock during the period of his ownership; and that the decedent consistently voted the shares of stock at shareholders' meetings held during his lifetime. Additionally, the decedent, from 1965 until his death in 1967, served as a member of the Board of Directors of the Bank and received compensation for his services as a director. According to the Bank's bylaws, to be eligible to serve as a director, a person must own not less than 40 shares of stock standing in his own name. The decedent owned no shares of stock in the Bank other than the 245 shares which the lower court later determined were owned by the individual appellees pursuant to the *inter vivos* gift.

On the other hand, the administrator and, also, individual appellee, Charles Elbert Tomkies, offered evidence from the former husband of Sarah Blethen, Dr. Harry S. Blethen, Jr., who testified, over objection, that the decedent told him that he intended to leave the bank stock to the children of Frank H. Tomkies. Further, that in Blethen's presence on January 31, 1959, Toney C. Tomkies executed an endorsement in favor of Frank H. Tomkies' children on the stock certificate representing 84 shares, and that Frank H. Tomkies took possession of the stock at that time. The administrator also introduced evidence from the executive vice president of the Bank who indicated that Frank H. Tomkies, rather than Toney C. Tomkies, was the "boss of the family" and was the responsible person with whom the Bank dealt in regard to its business and questions of stock ownership and control within the Tomkies family. In that regard, various members of the Tomkies family had been shareholders and members of the Bank's board of directors continuously since the year 1927.

In argument, the appellees also implied that the record ownership of bank stock continued in the name of

Toney C. Tomkies merely for the purpose of giving him the right to continue to serve on the Bank's board of directors. Additionally, the appellees consistently maintained that the custody of all of the bank stock had been given to and held by Frank H. Tomkies until his death. Subsequent possession of the certificates was then apparently obtained and transferred through Charles E. Tomkies.

Evidence was also adduced that the dividend checks, although payable to Toney Tomkies, were mailed to Frank H. Tomkies at his Huntington post office box at Frank H. Tomkies' direction. Dr. Blethen testified that his former wife, Sarah, received and paid taxes upon a portion of the dividends for a period of time between 1959 and 1963.

This Court's summary of the relevant evidentiary aspects is perhaps at variance with what was considered important by the trial court. In that regard we note that the disposition of this case was impeded, materially, by the trial court's failure to make adequate findings of fact as required by Rule 52, W. Va. R.C.P. *See, Commonwealth Tire Co. v. Tri-State Tire Co.*, W. Va., 193 S.E.2d 544 (1972). Notwithstanding this deficiency, there appears to be sufficient salient evidence in the record to warrant disposition of this appeal on the merits, without remand. *See, City of Morgantown v. Town of Star City*, W. Va., 195 S.E.2d 166 (1973).

The appellant contended below, and now here, that Charles Tomkies violated his fiduciary duties to the estate of Toney C. Tomkies by causing a transfer of said shares of stock from the estate to the *inter vivos* claimants, and secondly, that he violated his fiduciary duty as Committee for Frances Rogers, a beneficiary of the estate, when he transferred the stock against her interest. The court below did not pass upon these contentions and this Court will not rule upon nonjurisdictional errors presented in this posture. *Parker v. Knowlton Construction Company, Inc.*, W. Va., 210 S.E.2d 918 (1975); *Pettry*

*v. Chesapeake & O. Ry Co.*, 148 W. Va. 443, 135 S.E.2d 729 (1964).

The main contention of the appellant is that the purported transfer of the bank shares of stock by the decedent within his lifetime to the individual appellees was ineffectual in that (1) there was no transfer of ownership; (2) there was no delivery; and (3) Toney C. Tomkies retained dominion and control over the shares of stock and exercised the rights of ownership until his death.

The appellant also attacks as incompetent, the testimony of Dr. Blethen, as violating the "dead man's statute" in that (1) it was testimony given against the interest of the decedent; (2) it was in the financial interest or favor of Blethen, former husband of one of the *inter vivos* donees, because a decretal duty required him to pay alimony and child support to that donee; and (3) it concerned transactions against the decedent's interest which occurred during the marriage relation with one who was asserting an interest contrary to that of the decedent. As will appear, our method of resolving this appeal makes it unnecessary to directly pass upon this error assignment. Nevertheless, see the ruling of *Sattes v. Sattes*, 113 W. Va. 708, 169 S.E. 392 (1933):

> "If a husband or wife is incompetent by reason of Code 1931, 57-3-1, to testify with respect to personal transactions or communications between such husband or wife and a decedent, the consort of such husband or wife is also incompetent to testify as to such matters both during the joint lives of the two spouses and thereafter." *Syllabus* point 1., *id.*

Inasmuch as the appellant's broad-based attack on the judgment below asserts failure of proof upon every essential element of a valid gift *inter vivos*, we refer to an accepted definition of such a gift:

> "To constitute ... a gift [*inter vivos*] the donor must be divested of, and the donee invested with the right of property in the subject of the gift; it must be absolute, irrevocable, without any refer-

ence to its taking effect at some future period. The donor must deliver the property and part with all present and future dominion over it. 2 Kent. 589; *Carpenter v. Dodge*, 20 Vt. 595; *Northrop v. Hale*, 73, Me. 66, 2 Schouler Per. Prop.; *Pierce v. Savings Bank*, 129 Mass. 432; *Pope v. Savings Bank*, 56 Vt. 285; *Grover v. Grover*, 24 Pick 261; *Dole v. Lincoln*, 31 Me. 422." *Dickeschied v. Bank*, 28 W. Va. 340, 359 (1886).

The same elements are required to be shown when the subject of the gift is corporate stock. *See,* 38 Am. Jur. 2d *Gifts,* §§ 49 and 50 (1968).

The law does not presume that the owner of property voluntarily parts with it in absence of valuable consideration. *Claytor v. Pierson*, 55 W. Va. 167, 172, 46 S.E. 935, 937 (1904). Consequently, the standard of evidence required to establish an *inter vivos* gift must be clear and convincing on every element necessary to constitute the gift. *Raines v. Raines*, 96 W. Va. 65, 73, 122 S.E. 437, 440 (1924); *Brock v. Brock*, 92 Va. 173, 23 S.E. 224 (1895); *Collins v. Lofftus*, 10 Leigh 5 (Va. 1839); *Brown v. Handley*, 7 Leigh 119 (Va. 1836); *see also, McKimmie v. Postlethwait*, 78 W. Va. 273, 276, 88 S.E. 833, 834 (1916); *Dickeschied v. Bank, supra,* at 360. Applying these principles to a review of the evidence of this case reveals a patent failure of proof of the fundamental elements of a valid *inter vivos* gift.

First and foremost, there is no proof that Toney Tomkies manifested a present and absolute intention to part with the right of property in the stock and to invest the same in the donees who were named in the endorsement clause of the certificates. For example, it was not disputed that the decedent, during his lifetime, retained a position on the board of directors of The National Bank of Summers which, according to the admitted pleadings, required stock ownership. It likewise was uncontroverted that the stock dividends were made payable to Toney Tomkies after the purported assignment, and that he retained and exercised the right to vote the shares. Other cumulative indicia of his retained rights of property

in the stock, while not as compelling, are also highly supportive of the appellant's contention. The record transfer of the stock, as noted, was not attempted until after the death of Toney Tomkies, notwithstanding the fact that the purported assignments were executed on January 31, 1959, February 10, 1960, and June 5, 1964.

Moreover, it is to be noted that Dr. Blethen, who witnessed one of the endorsements, testified that on the occasion of that assignment, Toney Tomkies said that he wanted to "leave" the shares to the children of Frank H. Tomkies. On re-cross, Dr. Blethen stated that he understood the word "leave" to mean that Toney wanted the children to inherit the stock. Such testimony, assuming its competency for the moment, tends to refute the testator's present intent to make a gift. The *inter vivos* gift, to be effective, must take effect at once and completely. *Steber v. Combs*, 121 W. Va. 509, 5 S.E.2d 420 (1939); *Board v. Callihan*, 33 W. Va. 209, 10 S.E. 382 (1889); *Hogue v. Bierne*, 4 W. Va. 658 (1871). As is noted in *Steber v. Combs, supra,* at 513: " '. . . If it regards the future it is but a promise; and being a promise without consideration it cannot be enforced, and has no legal validity.' " To the same effect, *see, Grace v. Klein, Admr.*, 150 W. Va. 513, 147 S.E.2d 288 (1966); *Banner Window Glass Co. v. Barriat*, 85 W. Va. 750, 102 S.E. 726 (1920); *Roberts v. Coleman*, 37 W. Va. 143, 16 S.E. 482 (1892).

Secondly, the proof failed to establish that Toney Tomkies delivered the gift at the time of the purported assignment. It is well established that an *inter vivos* gift must be consumated by delivery. *Grace v. Klein, Admr., supra; Board v. Callihan, supra; Miller v. Neff's Adm'r.,* 33 W. Va. 197, 10 S.E. 378 (1889); *Dickeschied v. Bank, supra.* The unexplained possession of the stock certificates by the administrator, Charles E. Tomkies, or by Frank H. Tomkies following the death of Toney Tomkies is, itself, insufficient to establish the delivery:

> "The mere possession of the subject of the alleged gift, unaccompanied by proof of its delivery by the donor to the donee, is insufficient to es-

tablish it as a gift either *inter vivos* or *causa mortis.*" *Syllabus* point 5., *Dickeschied v. Bank, id.*

The meager evidence of delivery consisted of: (1) the hearsay testimony of Mr. McLean, the Bank vice president, that shortly after Toney Tomkies' death, Frank H. Tomkies advised him that he, Frank H. Tomkies, had the shares in his possession before delivering them to Charles Tomkies; and (2) the assailed testimony of Dr. Blethen relating to the decedent's endorsement on one of the stock certificates. Blethen's testimony was that Frank H. Tomkies placed the certificate on a table for Toney's signature, that Blethen signed as a witness, and that, thereafter, Frank H. Tomkies picked up the certificate from the table. We recognize the rule that delivery of an endorsed instrument need not be made to the donee personally, but may be made to a trustee or agent. *Payne v. Tobacco Trading Corp.*, 179 Va. 156, 18 S.E.2d 281 (1942); *Johnson v. Colley*, 101 Va. 414, 44 S.E. 721 (1903). Further, the transfer of a gift represented by a certificate may be by delivery of symbolic or *prima facie* evidence of ownership, i.e., the stock certificate— *Morris v. Westerman*, 79 W. Va. 502, 92 S.E. 567 (1917); *Swan v. Swan's Ex'r.*, 136 Va. 496, 117 S.E. 858 (1923). Nevertheless, we are unable to discern in this record clear and convincing evidence of delivery at the times of the assignments.

If we shift our perspective, the question becomes whether there is a justifiable basis in the evidence which would establish a *parol* gift of the bank shares subsequent to the purported assignment. According to *Miller v. Neff's Adm'r.*, 33 W. Va. 197, 10 S.E. 378 (1889):

> "To constitute a valid parol gift, there must be an actual delivery of the thing given, but the delivery must be according to the nature of the thing given, and if the property is at the time in the possession of the donee, as agent for the donor or otherwise, it is not necessary that the donee should surrender to the donor his actual possession, in order that the later (sic) may re-

deliver the same to him in execution of the gift; but if the donor relinquishes all dominion over the thing given, and recognizes the possession of the donee as being in his own right, and the latter accepts the gift and retains the possession in virtue thereof, the gift is complete." *Syllabus* point 3., *id.*

*See also, Morris v. Westerman*, 79 W. Va. 502, 511, 92 S.E. 567, 571 (1917). We must answer our query in the negative.

The same evidence, however, which so forcefully defeats the requisite indicia of the gift by the assignment, also precludes any finding of a subsequent completion of the gift by the donor's relinquishment of dominion over the property. Not only was his expressed intent—"to leave"—*per verba de futuro*, his consistent conduct thereafter was indicative of the intent to retain the benefits of stock ownership by retaining a seat on the board of directors, and by voting said shares.

While this Court is reluctant to substitute its judgment for that of the trial court upon matters which are essentially factual, we find in this record insufficient evidence to support the trial court's decision. As applied in *Bluefield Supply Company v. Frankel's Appliances, Inc.*, 149 W. Va. 622, 142 S.E.2d 898 (1965):

"When the finding of a trial court in a case tried by it in lieu of a jury is against the preponderance of the evidence, is not supported by the evidence, or is plainly wrong, such finding will be reversed and set aside by this Court upon appellate review." *Syllabus* point 8., *id.*

Accord: *Work v. Rogerson*, 152 W. Va. 169, 160 S.E.2d 159 (1968); *J & G Construction Co. v. Freeport Coal Co.*, 147 W. Va. 563, 129 S.E.2d 834 (1963); Rule 52, W. Va. R.C.P. *See, Norris v. Barbour*, 188 Va. 723, 51 S.E.2d 334 (1949).

For the reasons expressed, we hold the appellees failed to establish, under the proper burden of proof, a

gift *inter vivos* of the stock. The trial court's final judgment, therefore, was clearly erroneous and, accordingly, is reversed and the case is remanded for final disposition consistent with this opinion.

*Reversed and remanded*
*with directions.*