# CHARLESTON.

## CLAYTOR v. PIERSON.

Submitted February 16, 1904.   Decided March 1, 1904.

1. VALID GIFT.

    W. D. C. being ill, and in the expectation of death, gave and delivered to J. E. C., his brother, a paper in the words and figures following, to-wit: "Sewell, W. Va., Aug. 26th, 1899.

$1100.00. Eleven hundred dollars. Received of William Clay-
tor for safe keeping. L. C. Claytor." William Claytor men-
tioned in the receipt being said W. D. C. At the time of the
gift and delivery of the receipt the donor said to the donee
·that he had a present for him (donee): that donor took the
receipt from his trunk, and said to donee, "Here, I will give
you this; here is a note, I have for $1100.00. I will make you
:a present of this; take it, and go and draw the money on it;"
that donor further told donee, not to let anybody else have it,
his (donor's) wife, or anybody else; that he did not want
his wift to have it; that he was going to the hospital and the
way the disease worked on him, he didn't think that he would
get well, and further said, "I will give it (the receipt) to you
before I go, so you will be sure to have it;" that donor was
then the owner of said money, which was at the time in the
care and keeping of L. C. C.; that donor was on that day taken
to the hospital, where he died one month thereafter as a re-
sult of his said illness; that two days before his death, at the
hospital, donor asked another brother, did Ed. (meaning donee)
have the note, (meaning the receipt) which he gave him, and
being told that Ed. had the receipt, donor then said to tell
him (Ed.) to be sure and keep it, * * * to go and get
the money on it, that donee kept possession of said receipt
continuously until after the death of donor; and that donor
died without making any change in relation to the gift, and
leaving donee surviving him. *Held*: That the acts and decla-
rations of the donor constitute a valid gift of said money
*casua mortis.* (p. 171).

Error to Circuit Court, Fayette County.

Action by J. E. Claytor against E. G. Pierson and others.
Judgment for defendants, and plaintiff brings error.

*Reversed.*

C. W. OSENTON and W. L. ASHBY, for plaintiff in error.

DILLON & NUCKALLS, for defendants in error.

MILLER, JUDGE:

J. E. Claytor appeals from a decree of the circuit court of
Fayette County entered on the 6th day of March, 1902, in a
chancery cause wherein he was plaintiff and E. G. Pierson, in
his own right, and as administrator of W. D. Claytor, deceased,
and L. C. Claytor, were defendants.

The bill alleges that, on the 26th day of August, 1899, W. D.

Claytor, who was sometimes called William Claytor, deposited and left eleven hundred dollars belonging to him, with defendant L. C. Claytor for safe keeping; that L. C. Claytor thereafter executed and delivered to W. C. Claytor a receipt therefor, in the words and figures following, to-wit:  Sewell, W. Va., August 26th, 1899.  $1100.  Eleven hundred dollars.  Received of William Claytor for safe keeping.  L. C. Claytor." That on the —— day of ————, 1900, said W. D. Claytor was taken suddenly and violently ill, and continued to grow worse until the 19th day of November, 1900, when he died; and that during his said last sickness, and in expectation of death, he gave and delivered to the plaintiff, said sum of eleven hundred dollars, then deposited for safe keeping with said L. C. Claytor, as aforesaid; and then and there gave and delivered to the plaintiff said receipt for said money.  That on the 22d day of November, 1900, the defendant, E. G. Pierson, without authority of law therefor, caused himself to be appointed administrator of the estate of said W. D. Claytor, and qualified as such; that on the —— day of ————, 1900, said E. G. Pierson asked plaintiff to allow him to inspect said receipt for said eleven hundred dollars, which plaintiff did; and that thereupon said Pierson, in violation of plaintiff's rights, kept said receipt and refused to return it to plaintiff; and that plaintiff was informed that Pierson had collected from L. C. Claytor eight hundred dollars on said receipt.  Plaintiff then prays that L. C. Claytor be required to answer and disclose what disposition, if any, he has made of said eleven hundred dollars; that said Pierson be also required to answer and discover what disposition, if any, he has made of said receipt; that said eleven hundred dollars be decreed to plaintiff, and for general relief.

Defendant Pierson answered the bill, and avers in his answer that, at the instance of Annie Claytor, widow of W. D. Claytor, he was appointed administrator of said decedent; that as such administrator, he took into his possession the said receipt for said eleven hundred dollars with the other personal property of the estate of the decedent; and that he found said receipt in the possession of said J. E. Claytor, who turned it over to respondent without objection.  Respondent denies the gift of said receipt, and of the money therein mentioned by said W. D. Claytor to plaintiff as alleged in the bill; but admits that he had

collected $865.00 from said L. C. Claytor upon said receipt; which receipt he files with his answer.

Eliminating the incompetent testimony in the cause, we think the legal evidence therein clearly and conclusively establishes the following facts: That the plaintiff and W. D. Claytor, the decedent, were brothers; that on the 26th day of August, 1899, said W. D. Claytor delivered to his cousin, L. C. Claytor, said eleven hundred dollars for safe keeping, and took from him the receipt set out in the bill, which was then signed by said Claytor and delivered to W. D. Claytor; that in the latter part of October, 1900, W. D. Claytor became ill; that on the 19th day of that month he was removed from his home to the hospital at Paint Creek in said county, where he died on the 19th day of November, 1900, not having recovered from his illness above mentioned. On the morning of the 19th day of October, 1900, while being prepared for his removal from his home to the hospital, he was, with the assistance of his two brothers, and at his request, taken to his trunk in his house, from which he took the said receipt, and gave and delivered it to his brother, the plaintiff. The evidence touching this transaction, as given by Richard Claytor, is substantially as follows: "He told Ed," (meaning the plaintiff, J. E. Claytor), "that he had a present for him; and Ed. told him all right, and asked him what it was; and he would not say, but got up, and witness and John Claytor, assisted him to his trunk." After stating about the finding of the receipt in the trunk by said W. D. Claytor, witness states that W. D. Claytor further said: "Here, I will give you this; here is a note I have for $1,100. I will make you a present of this;" and Ed. told him, "All right." Witness also says that after the receipt was handed to J. E. Claytor, he (J. E. Claytor) handed it to witness, who read it to plaintiff, and then plaintiff put it in his pocket. Witness states that W. D. Claytor also said to plaintiff "to take it (the receipt) and keep it; and go and draw the money on it; that it was his (plaintiff's); he made him a present of it; and Ed. told him, 'All right.' He (decedent) told him (plaintiff) not to let anybody else have it, his wife or anybody else. * * * He further told him (plaintiff), 'Don't let my wife get hold of it, because she hasn't treated me right; I don't want her to have it.' He said he was going to the hospital, and the way the disease worked on him, he didn't

think that he would get well; and, 'I will give it (the receipt) to you before I go so you will be sure to have it.' "

This same witness says that W. D. Claytor died on Monday; that he was down to see him at the hospital on the preceding Saturday; that "he, (W. D. Claytor) asked me, that Saturday I was there, did Ed. have the note, which he gave him? and I told him 'Yes'; and he told me to tell him (Ed.) to be sure and keep it; and don't let Annie or anybody else have it; to go and get the money on it; and I told him 'All right.' " The witness says that, at that time, decedent told him that he was not getting any better; and "I asked him if he thought he would get well; and he said, 'No'; and he said that the Lord had forgiven him of his sins; and he didn't think he would be here, but a little while; and to tell Ed. (the plaintiff) to keep what he gave him."

John Claytor, another brother of deceased, testifies, that he was present at the time the receipt was given by W. D. Claytor to J. E. Claytor. He corroborates Richard Claytor about the receipt being taken out of the trunk and given to the plaintiff by decedent, who, at the time, said to plaintiff: "Here it is, you can have this. * * * This is yours; you can get the money on it any time you want it." It is also shown by the evidence that the receipt was seen in the possession of plaintiff about two weeks before the death of the donor; that plaintiff then claimed it as his own; and that it remained in his possession up to the time when it was procured from him by Pierson. The evidence further shows that Annie (the wife of decedent) was a woman of questionable character; and was convicted upon an indictment on the charge of causing the death of her husband, W. D. Claytor, by poison, but that on the second trial, she was acquitted of the charge.

The court, at the final hearing of the cause, dismissed the plaintiff's bill, at his cost; and of this action, the appellant complains; and says that the decree of dismissal was and is erroneous.

The principal question presented for our determination is whether or not, the evidence clearly and conclusively establishes all the essential attributes or constituent elements of a *donatio mortis causa,* as defined by the law, and established by the course of adjudication. In *Dickeschied* v. *Bank,* 28 W. Va.

340, this Court defined and established the essential elements of a valid gift, *causa mortis;* and held, that the donor should make the gift in contemplation of death, either in his last illness, or while he is in other imminent peril; that his death should result from such illness, or peril; that the donor must part with all dominion over the subject of the gift, so that no further act by him, or the personal representative, will be necessary to vest the title perfectly in the donee, in order that it may belong to him presently, as his own property, in case the owner should die of his present illness, or from the impending peril, without making any change in relation to the gift; and leaving the donee surviving him. Blackstone says that a *donatio mortis causa* takes place "when a person in his last sickness, apprehending his dissolution near, delivers or causes to be delivered to another, the possession of any personal goods * * * to keep in case of his decease."

In *Dickeschied* v. *Bank, supra,* it is also held, "that delivery at the time of making the gift, is essential to a perfect gift *causa mortis.* It is not the possession of the donee, but the *delivery to him by the donor, that is material;* and that where a party claims title to personal property as a gift, either *inter vivos,* or *casua mortis,* the burden of proof, in whatever form the issue may be presented, rests upon him to establish the validity of the gift, of which the delivery of the possession is the strongest and most material. * * * The mere possession of the chattel, unaccompanied by proof of its delivery by the donor to the donee, is insufficient to establish a gift either *inter vivos* or *causa mortis,* for every person claiming title by gift, necessarily admits that up to the time when the gift was alleged to have been made, the chattel was the property of the donor. And as the law does not presume that the owner has voluntarily parted with his property without any valuable consideration, the gift itself, and the delivery thereof, must be proved by the party claiming under it. * * * The donor must not only give, but he *must deliver;* and that delivery must be actual when the subject of the gift is capable of an actual delivery of the thing itself; or it must be the delivery of the means of getting the possession and enjoyment of the thing; and this delivery must be at the time of the gift." 14 Am. &

Eng. Enc. Law 1029, says: It is well settled that choses in action may be the subject of valid gifts. Thus, gifts of promissory notes, bonds, mortgages, savings-banks books, certificates of the deposit, etc., have been upheld. The words "goods and chattels" in section 1 of chapter 71 of our Code, include money and every other kind of personal property, which may be the subject of a gift *inter vivos* or *causa mortis*. *Dickeschied* v. *Bank, supra,* 368; 14 Am. & Eng. Enc. Law, 1028.

No absolute rule can be laid down as' to what will constitute a sufficient delivery to support a gift in all cases, for in each case the character of the requisite to sustain the transaction as a gift, will depend very largely upon the nature of the subject matter of the gift, and the situation and circumstances of the parties. Am. & Eng. Enc, Law *supra,* 1019. It is well established that where the chose in action is a bill, promissory note, or other written instrument, payable, to order, no indorsement of the instrument is necessary. 14 Am. & Eng. Enc. Law 1023, and cases cited. Counsel for appellee cites 3 Minor, 91. The entire text, of which a part is given in the brief, is as follows: The delivery under the statute, as well as at common law, must be, as in every other case, according to the nature of the thing—always being an actual delivery, so far as the subject is capable of it, and not momentary nor colorable, but *bona fide,* remaining for a time with the donee, or his assigns. If the thing be not capable of actual delivery, in the literal sense, there must be some act equivalent to it. The donor must part, not only with the possession, but with the dominion of the property. If the thing given be a chose in action, or an interest in a chattel, by way of remainder, the law requires an assignment *or some equivalent instrument,* in writing; and the transfer must be actually executed, His intention to execute it not being perfected, it does not amount to a gift. *Mayo's Ex'r* v. *Carrington's Ex'r,* 19 Grat. 74, cited by Mr. Minor, holds: "As a result of all the authorities, that a voluntary gift valid in law or equity, may be made of any property, real or personal, legal or equitable, in possession, reversion or remainder, vested or contingent, and including choses in action, unless they be of such a nature as that an assignment of them would be a violation of the law against maintenance and champerty; that such a gift to be valid, must be complete, and not executiory;' that what is necessary to the

completion of the gift, depends on the nature of the subject and the circumstances of the case; and that it is always sufficient, though not always necessary, to the completion of a gift, at least between the parties, that the donor do everything in his power, or which the nature of the case will admit of, to make it complete."

The above seems to be a correct statement of the legal principle involved here. If any other requirement as to delivery, be essential in cases where the owner does not have, and cannot, at the time, have actual possession of the specific thing, which is the subject matter of the gift, or in instances, where the donor is physically or otherwise incapable of making an actual transfer or delivery, there, no valid gift could be made by him.

In the case of *Elam* v. *Kean*,, 4 Leigh 333, the owner of a bond which was in suit, and for which the owner held an attorney's receipt, told the plaintiff that he might have the bond, and delivered him the attorney's receipt for it, instead of delivering the bond itself, which was then filed in the suit in court; no consideration was given by the plaintiff for the bond: *Held,* this was a valid gift of the bond to the plaintiff, and he is entitled to recover the money collected upon it. Brooke, J., in his opinion, says: "The gift, in the case before us, was proved to have been made by Mrs. Kean to the appellee; and the attorney's receipt for the bond, the subject of the gift, then in suit, was delivered to the donee. This was as effectual as the delivery of the bond itself. The attorney was bound to respect his receipt; he could not have refused to pay the money collected on the bond, or to deliver the bond itself, if demanded, to the donee." .

In the case of *Ward* v. *Turner,* the doctrine is very fully explained by Lord Hardwicke. That was the case of a donation *causa mortis* of receipts for South Sea stock, which was held invalid. His first objection was, that there was but one witness, whereas the civil law, from which the doctrine was taken, required five; but this he did not rely on. In conclusion, he said, that the gift there was merely legatory, and amounted to a nuncupative will, and contrary to the statute of frauds. He seems to admit the authority of *Shelby* v. *Jones,* where a tally for L. 500 was given by the delivery of the key of a trunk, in which it was found; though he intimates, that lord Cowper went, in that case, on the ground of a satisfaction or ademption.' This doc-

trine was examined by this Court, in *Ewing* v. *Ewing,* where it is said that "there is no distinction between gifts *causa mortis* and gifts *inter vivos* (like that now before us), except that in the former case, the gift does not take effect until the death of the donor, in the latter, it takes effect immediately." Carr, J., says: "The bond itself could not be delivered: it was in court; in the custody of the law. The receipt was its representative. We must presume it described the bond accurately, and stated that it was received to be put in suit; and that when collected, the attorney would account for it. As in the case of the key, the delivery of this receipt, 'was the true and effectual way of obtaining the use of the subject.' Speaking from my own experience, I should say an attorney requires no better order for the payment of money he has collected on a bond, than the receipt he has given for the bond: when he takes this in, with a receipt upon it for the money, he feels himself safe. I think, therefore, the circuit court did not err in refusing to give the instruction to the jury asked by the appellant."

In *Thomas* v. *Lewis,* 89 Va. 1, (18 L. R. A. 170), cited by appellee, it is, among other things, held that, "A valid gift *causa mortis* including the valuables in the depository is effected where a man sick in bed on the day of his death sends for securities and the keys to the depository containing other securities all belonging to him, and with the remark, 'I am a sick man and don't know what may happen to me,' picks up the securities and hands them to the donee, saying, 'I give you these,' and taking the keys describes in a general way the contents of the depository and handing the keys to the donee says, 'These keys I now give you,' are where the valuable papers are; 'whatever you find you can have—it is yours,' and then directs the donee to place the securities and keys in her trunk and lock it, which the donee does." But it is also held therein that delivery of possession of a savings bank pass book in consummation of a gift *causa mortis* is not sufficient to transfer the bank deposit. We are unable to determine upon what fact or legal principle involved in that case the decision as to the pass book is based. Many cases hold the contrary. *Page* v. *Lewis,* 18 L. R. A. 171, note; 14 Am. & Eng. Enc. Law, 1029, and cases there cited.

In *Elam* v. *Kean, supra,* 335, Carr, J., said: "There are many things, of which actual, manual tradition cannot be made, either

from their nature, or their situation at the time: it is not the intention of the law, to take from the owner the power of giving these: it merely requires that he shall do what, under the circumstances, will in reason, be considered equivalent to an actual delivery."

In *Stephenson* v. *King,* 81 Ky. 425, it is held, that the delivery by the decedent of the key of her desk, and the actual delivery to her mother of the letter of King, containing a full description of the notes and bonds held by him as agent of the decedent, is a sufficient delivery to make the gift *causa mortis complete;* and that the arbitary rule, requiring an assignment, and delivery of the identical thing, in order to make such a gift valid, has been abandoned.

The facts in the case show all the elements of a valid gift *casua mortis.*. The gift was made by the donor in the peril and contemplation of death; it was of personal property, such as, under the law, may be the subject of a gift *casua mortis;* possession of the receipt by the donee was taken at the time of the gift; and the donor died of his then illness in a month thereafter without making any change in relation to the gift. It was accepted by the donee, at the time it was made; and it became absolute at the donor's death. Donor did not want his wife to have his money for the reason stated by him, and, doubtless, for the other reasons disclosed by the record. He did want his brother, J. E. Claytor, to have it because, as he said, "he always thought more of him than the rest." Therefore, applying the law to the facts we hold that the plaintiff was and is entitled to the money specified in said receipt, at and from the time of W. D. Claytor's death.

The evidence proves that about two weeks before the death of W. D. Claytor, the plaintiff showed said receipt to defendant L. C. Claytor; that after Pierson obtained possession of the receipt, and before L. C. Claytor paid him any money thereon, the plaintiff told said L. C. Claytor to pay the money therein mentioned to Pierson; that L. C. Claytor afterwards, on the 3rd day of December, 1900, paid $865.00 of the money mentioned in the receipt to Pierson; that on the 4th day of December, 1900, Pierson gave his check on the Fayetteville National Bank, for six hundred dollars payable to Anna Claytor, and signed it by the name and designation of E. G. Pierson, administrator, which

check was endorsed by her, and delivered to C. W. Dillon, who, in turn, endorsed the same, deposited it in the bank, and received credit for it on the same day. There is some conflict in the evidence as to whether or not Pierson was notified by the plaintiff not to pay out the money before the said check was delivered to Anna Claytor, but it does not sufficiently appear that he had knowledge of the claim of plaintiff to the money, before and at the time he collected it from L. C. Claytor.

The plaintiff was entitled to collect the money from defendant L. C. Claytor, immediately upon the death of W. D. Claytor. L. C. Claytor having notice of the claim of plaintiff to the money, did not relieve himself of liability to the plaintiff, by his said payment to Pierson; and Pierson, also having notice of plaintiff's claim, paid the six hundred dollars to Anna Claytor, at his own risk, and subjecct to plaintiff's right thereto. Therefore, defendant L. C. Claytor is liable to plaintiff for the whole sum of eleven hundred dollars, and Pierson is likewise liable for said sum of eight hundred and sixty-five dollars, with interest thereon from the time he received the same; but as between said defendants, Pierson is primarily liable for said last mentioned sum.

Upon the evidence, the circcuit court should have made and entered its decree in the cause, requiring Pierson and L. C. Claytor to pay the plaintiff, said $865.00, with interest thereon from the 3rd day of December, 1900, and further requiring said L. C. Claytor to pay the plaintiff $235.00 with interest thereon from the 19th day of November, 1900, being the balance of said eleven hundred dollars.

For the reasons stated, the decree of the circuit court must be reversed and held for naught, and a decree entered by this Court as above indicated.

*Reversed.*