# CHARLESTON.

STATE v. MORRIS *et al.*

Submitted February 12, 1918.　Decided February 26, 1918.

DEEDS—*Deed or Executory Contract.*

A writing, although signed and sealed by the parties to it, styled by them ''Memorandum of Agreement,'' and containing the words: ''It is further agreed that the said Price will convey to the said Peyton all the mining rights and privileges of his land,'' is not a deed of conveyance, but only an executory contract to convey at some future time.

Appeal from Circuit Court, Boone County.

Proceeding by the State of West Virginia against John Morris, E. T. Crawford, and others. Decree for plaintiff, and defendants E. T. Crawford and others appeal.

*Reversed, and decree entered dismissing the petition.*

*Leftwich, Byrnside & Shaffer,* for appellants.

*E. T. England,* Attorney General, *Henry A. Nolte,* Assistant Attorney General, and *Murphy & Wade,* for appellees.

WILLIAMS, JUDGE:

This is a proceeding by the commissioner of school lands of Boone county to sell, as forfeited land, the minerals in a tract of land described as ''being the same tract conveyed by Madison Price to Charles Morris by deed bearing date on the 4th day of August, 1858,'' and designated in the proceeding as tract No. 2. There are two sets of claimants, both claiming title, mediately, from said Madison Price as a common source. They were all made parties to the State's petition and answered, setting up their respective claims. The court ascertained, according to the report of the commissioner to whom the cause had been referred, that the title to the minerals was forfeited to the state for non-entry on the land books of Boone county since the year 1874, in the name of Charles Morris, Sr., now deceased; that no one was in position to take the benefit of the forfeiture, under any of the provisions of Sec. 3, Art. XIII of the Constitution; and de-

creed that John Morris and others, the heirs of said Charles Morris, deceased, had the right to redeem the same, and ascertained and decreed the amount of money to be paid in order to redeem it. W. L. Ashby, E. T. Crawford and Boone & Kanawha Land & Mining Co., a corporation, the other set of claimants, denying that Charles Morris ever had title to said minerals and claiming to be the owners thereof in fee themselves, by title regularly derived from the aforesaid Madison Price, which title they say has never been forfeited, have appealed.

The Morrises assert that their ancestor, Charles Morris, Sr., acquired title to the minerals by deed from Madison Price, dated August 4, 1858, and duly recorded six days thereafter. That deed grants to said Morris "the mineral rights and mining privileges'' in a certain tract of land described as "the tract formerly owned by the said Price and which mineral and mining rights have been heretofore conveyed by said Price to William M. Peyton." By deed of the same date, and recorded also on the same date as the above, William M. Peyton by his agent and attorney in fact, John R. Peyton, granted to said Madison Price "all mining and mineral rights and privileges" in the same land describing it as "being the same tract of land whose mining rights and privileges were partly conveyed by the said Price to the said William M. Peyton," and also by reference to a recorded paper denominated a "deed of partition and division" between said Price and Peyton, made in the year 1850. The paper referred to is styled "Memorandum of Agreement," and bears date 1st of October, 1849. It recites that there is some conflict between the parties as to their land titles, and for the purpose of an amicable settlement of their dispute "have entered into the following agreement, viz: that the said Peyton shall relinquish to the said Price all claim which he may have upon that portion of the Preston survey upon which said Price resides," then follows a local description of the land which admittedly includes the land containing the minerals claimed to be forfeited. The agreement further provides that, in consideration of Peyton's "relinquishment" to Price of his claim to the land described, "the said Price relinquishes and prom-

ises to convey to the said Peyton all his right and title to the residue of the Preston survey'' and certain other surveys, describing them by location. The paper is signed and sealed by the parties as of the date given. There is no attempt to convey or even an agreement by Price to convey the minerals in his lands to Peyton in the body of this paper. But below their signatures and apparently on the same paper, is added the following, which is also signed under seal by both parties, viz. :

''N. B. The boundary of land on the south side of Coal to be conveyed to Price in the deed is that which was recently surveyed by William Smoot and it is further agreed that the said Price will convey to said Peyton all the mining rights and privileges of his land. Witness our hands and seals this 18 Augt. 1850.''

The paper was acknowledged on the 21st of March, 1851, the justice who certified the acknowledgment referring to the paper as ''the annexed agreement or deeds.'' It was recorded three days later.

This instrument, although technically a deed because it is under seal, is not a grant or conveyance of land. It does not purport to be a present grant, but expressly contemplates the making of conveyances in the future. It says, ''Peyton shall relinquish to the said Price,'' and ''the said Price relinquishes and promises to convey to the said Peyton.'' In neither case do the terms import a present conveyance or contract executed. But the subjoined note is the material part of the instrument to be considered, because it is by virtue of it the Morris heirs claim the minerals. Their contention is that Price, by this addendum, first conveyed them to Peyton, and that he later reconveyed them to Price, August 4, 1858. This addition to the instrument was made for two purposes: first, to define more certainly that portion of the land on the south side of Coal River which Peyton had agreed to convey to Price; and, second, to provide for the conveyance to Peyton of the mining rights in Price's land, a thing not contemplated in the body of the original agreement. Respecting the minerals it does not purport to convey them, the terms employed by Price are that ''he will convey'', not that

he does or has conveyed them. The future tense of the verb is employed, thus clearly indicating an act to be performed at some future time, and not a completed act, as the present passing of title to land must necessarily be. Not only do the terms used by the parties styling the paper a memorandum of agreement, but all the words used to express the things to be done by them clearly import an executory contract. Intention of the parties is an important consideration in the construction of deeds and other writings, but intention must be gathered from the language employed to express it. It can not be supplied by intendment.

"In case operative words of present transfer are omitted, the instrument cannot take effect as a deed; and if other words are used, inconsistent with the intention to effect a present transfer, it will be construed accordingly." 9 A. & E. E. L. 93-94, and 137-138; *Moody* v. *McCown,* 39 Ala. 586; *Defrance* v. *Brooks,* 8 W. & S. (Pa.) 67; *Atwood* v. *Cobb,* 16 Pick. 227; and 8 R. C. L. 937. See also Sec. 1, Ch. 72, Barnes' Code. Properly interpreted the writing is only an executory contract. Reference to it as a deed, by Peyton in his later deed to Price for the "mineral rights," does not make it a conveyance.

Not having conveyed title to the minerals to Peyton by the aforesaid agreement, Price still had the legal title thereto, and, on the 15th of February, 1855, conveyed it to I. S. Samuels, trustee, to secure a debt to H. H. Hopkins. That deed passed "all his rights and title and interest" in the tract of land containing the minerals in question. It was later sold and conveyed without any reservation of minerals by the trustee to Leonard Morris by deed of date April 10, 1861, and Leonard Morris, on September 26, 1870, conveyed it to Charles Morris, a son of Charles Morris, Sr. That title has passed by an unbroken chain of conveyances to the Boone & Kanawha Land & Mining Co., and has never at any time been forfeited. The deed from Peyton to Price for the "mining and mineral rights," made on August 4, 1855, was a conveyance only of what Price already had, and had previously conveyed to said Samuels, trustee.

The exceptions taken by Crawford and Ashby and the

Land & Mining Co. to the commissioner's report should have been sustained. The decree of December 15, 1916, finding there had been a forfeiture of the minerals and the heirs of Charles Morris, Sr., had the right to redeem, will be reversed, and a decree will be entered here dismissing the State's petition in so far as it relates to the minerals in the tract of land therein described as Tract No. 2.

*Reversed and decree entered dismissing the petition.*