E. M. MEADOWS FUNERAL HOME *v.* C. M. HINTON *et al.*

(No. 8650)

Submitted January 18, 1938. Decided February 15, 1938.

610

*Paul J. Carr,* for appellant.
*Frederick W. Sawyers* and *W. A. Brown,* for appellees.

RILEY, JUDGE:

E. M. Meadows Funeral Home, a creditor of the estate of Hattie J. Hinton, deceased, and entitled by statute (Code, 44-2-21) to prior payment of its claim for funeral expenses, brought this suit in equity against C. M. Hinton, in his own right and as administrator of de-

cedent's estate, Moore C. Hinton, W. H. Hinton, Roy Hinton, Neta Kitts, Eloise Benjamin (nee) Thomas, Ada Epperly, Maude Burger, Vera Hinton Sarles, Araminta Hinton, and The Hinton Clinic, for the purpose, among others, of requiring the administrator to account for and sell twenty-two shares of stock in the Boone National Bank of Madison and a diamond ring. The commissioner to whom reference was had, found that there had been no absolute unconditional assignment and delivery by Hattie J. Hinton, during her lifetime of the stock and the ring, and that the same should be treated as assets belonging to her estate for which the administrator would be chargeable. The trial chancellor, in sustaining exceptions to the commissioner's finding, decreed that the twenty-two shares of stock were delivered to The Hinton Clinic, Inc., as collateral security for the payment of hospital expenses; that the clinic had a right to sell the stock and apply the proceeds thereof to the payment of its claim; and that the ring was delivered by C. M. Hinton to Vera Hinton Sarles, before the former qualified as administrator of the estate, and that said administrator was not chargeable with the same as an asset of the estate. It is from this decree that plaintiff appeals.

Hattie J. Hinton died intestate on August 6, 1935, and was buried by the plaintiff on August 8th. Thereafter, on August 23rd, C. M. Hinton, the decedent's brother, was appointed and qualified as administrator of her estate. The appraisement, which was not signed by the administrator, lists as personalty, the twenty-two shares of stock in controversy; the ring, however, was not included therein. In addition to the foregoing items which constitute the only personalty of value, it appears that Miss Hinton owned a 1/15 interest, valued at $300.00, in certain real estate left by her father. Both the personalty and the interest in the real estate are not sufficient to care for the hospital and undertaking bills.

A few days prior to her last illness, Miss Hinton delivered an unindorsed certificate representing the shares of stock to her brother, C. M. Hinton. She had not been receiving dividends, and was anxious to ascertain what

could be realized therefrom. Hinton, at the time, stated that it might be well for him to consult with W. T. Fredeking, vice-president of the First National Bank of Hinton, to which suggestion Miss Hinton acceded. After being stricken, Miss Hinton was removed to the hospital, where she died some three weeks later. While there, she made inquiries of C. M. Hinton and Fredeking about the stock, expressing a desire that the same be sold, and that the hospital bill be taken care of. Fredeking, after being told to get the stock from C. M. Hinton, did so, and upon presentation of the certificate for indorsement, was directed by Miss Hinton to have her brother, C. M. Hinton, indorse it for her, which he did. About two months later, Fredeking turned the stock over to the clinic.

At the time of her removal to the hospital, Miss Hinton said to her sister-in-law, "Francis, if anything should happen to me, I want Vera to have the ring." A similar statement was directed to C. M. Hinton, upon being taken from the ambulance. And, later, Miss Hinton took the ring from a drawer at the hospital and delivered it into the custody of C. M. Hinton. Immediately after the funeral, the latter forwarded the ring, valued for registry purposes at $125.00, by mail to Vera, in California.

## THE STOCK

Is The Hinton Clinic, Inc., entitled to the stock in payment of its debt? On direct examination, Fredeking testified that he was the agent for the clinic and took the certificate of stock as security for the hospital bill. His claim of agency, however, was not predicated upon any action of the clinic's board of directors. On cross-examination, he stated that the stock was delivered to him for the purpose of paying decedent's hospital bill. He further testified that he was to sell the stock; that Miss Hinton wanted the clinic to take it, and that witness told her he thought he could sell it, but that he did not know the condition of the bank.

In decreeing the delivery of the shares of stock to the

clinic as collateral, the trial chancellor necessarily held that Fredeking was its agent. Whether the delivery to Fredeking made him the clinic's agent must be solved in the light of the purpose for which the same was made. The certificate was placed in his hands for the purpose of selling the shares represented thereby, and not for their transfer to the clinic. He testified to this effect and this testimony does not support his statement that he was the agent of the clinic. At best, his claim of agency is the assertion of a mere conclusion, unsupported by other evidence and the rest of his testimony. Surely it is entitled to little, if any weight. 2 Am. Juris., p. 353, Agency, sec. 447; *Means* v. *Southeastern Gas Co.*, 113 W. Va. 864, 169 S. E. 390. When the certificate was delivered to Fredeking, he was charged with the duty to sell it. He was, and necessarily so, Miss Hinton's agent for that purpose. Therefore, delivery to him was not tantamount to delivery to the clinic.

## THE RING

Although delivery to the donee, or his agent, during donor's lifetime, is indispensable to a gift *causa mortis* (*Waugh* v. *Richardson*, 107 W. Va. 43, 147 S. E. 17; *Claytor* v. *Pierson*, 55 W. Va. 167, 172, 46 S. E. 935; *Smith* v. *Zumbro*, 41 W. Va. 623, 24 S. E. 653; *Board* v. *Callihan*, 33 W. Va. 209, 10 S. E. 382; *Dickeschied* v. *Exchange Bank*, 28 W. Va. 340; *Miller* v. *Jeffress*, 4 Gratt. 472, 45 Va. 472), the fact that Miss Hinton died prior to the actual delivery of the ring to the donee did not defeat the gift, for the law will presume, in the absence of countervailing circumstances, that Hinton received the same as the donee's agent. *Johnson* v. *Colley*, 101 Va. 414, 44 S. E. 721, 99 Am. St. Rep. 884; *Innes, Adm'r.* v. *Potter*, 130 Minn. 320, 153 N. W. 604, 3 A. L. R. 896, note 902; *Varley* v. *Sims*, 100 Minn. 331, 111 N. W. 269, 8 L. R. A. (N. S.) 828, 117 Am. St. Rep. 694, 10 Ann. Cas. 473; *Noble* v. *Garden*, 146 Cal. 225, 79 Pac. 883, 2 Am. & Eng. Ann. Cas., 1001, 1003; *In re Hanson's Estate*, 205 Iowa 766, 218 N. W. 308; *Beck* v. *Hall* (Mo. App.), 211 S. W. 127; *Rosenau* v. *Merchants' Nat. Bank*, 56 N. D. 123, 216

N. W. 355, 60 A. L. R. 1040, note 1059; *In Re White's Estate,* 129 Wash. 544, 225 Pac. 415; 12 R. C. L. 959. It thus appears that all the elements of a gift *causa mortis* are present. *Dickeschied* v. *Bank, supra; Waugh* v. *Richardson, supra.*

Such gifts, in the absence of fraud and undue influence, are perfectly valid, provided the rights of creditors are not affected. *Yancey* v. *Field,* 85 Va. 756, 8 S. E. 721; *Basket* v. *Hassell,* 107 U. S. 602, 609, 2 Sup. Ct. 415, 27 L. Ed. 500; *Emery* v. *Clough,* 63 N. H. 552, 554, 4 Atl. 796, 56 Am. Rep. 543; *Gaunt & Wife* v. *Tucker's Ex'rs.,* 18 Ala. 27, 31; *Raymond* v. *Sellick, et al.,* 10 Conn. 480, 485; *Pierce* v. *Boston Five Cents Savings Bank,* 129 Mass. 425, 37 Am. Rep. 371; *Chase* v. *Redding,* 13 Gray (Mass.) 418; *Baber* v. *Caples,* 71 Ore. 212, 138 Pac. 472, 475, Ann. Cas. 1916 C, 1025; *Seybold* v. *Grand Forks Nat. Bank,* 5 N. D. 460, 67 N. W. 682.

In *Chase* v. *Redding, supra,* Shaw, C. J., says: "But we think it equally clear that such a gift [*donatio mortis causa*] cannot avail against creditors. Their right is prior in character. A man is bound to be just before he is generous. Creditors have claims on the justice and legal duty of the debtor; whilst donees, legatees, and heirs, having paid nothing, are volunteers, and have claims only on his bounty. Strictly speaking, the only property which anyone can give away, voluntarily dispose of without consideration, is the balance which remains after payment of his debts."

A deficiency of assets to pay the lawful claims of creditors is apparent from the record. The gift, therefore, must give way, so far as may be necessary, to discharge the lawful demands against decedent's estate. In other words, Mrs. Sarles' title to the ring is subject to the contingent right and duty of the administrator to reclaim it.

The decree of the circuit court is therefore reversed and the cause remanded for the entry of a decree not in conflict with the principles herein contained.

*Reversed and remanded.*