EFFIE STEBER, *et als. v.* B. LANDIS COMBS, *et als.*

(No. 8918)

Submitted September 26, 1939. Decided October 24, 1939.

*John M. Baker,* for appellants.
*S. P. Bell,* for appellees.

510

RILEY, JUDGE:

Effie Steber, Oscar F. Combs, Lucy Best, Roy D. Combs, Fred E. Combs, L. Donvan Combs, and Helen Combs, seven of the ten heirs at law of Mary J. Combs, deceased, brought this suit against B. Landis Combs, J. D. Looney, and Hope Combs, the other three of decedent's heirs at law, praying that the defendants be required to convey to plaintiffs the legal title to three-tenths interest in real estate of which the said Mary J. Combs died intestate. From a decree granting the relief prayed for and refusing defendants a partition of decedent's real estate, this appeal is prosecuted.

The bill of complaint alleges that by a certain contract dated February 23, 1935, between the said Mary J. Combs in her lifetime and the plaintiffs, the latter acquired the equitable title to certain real estate and oil and gas rights underlying a tract of land situate in Roane County; that the plaintiffs are seven of the ten heirs at law of Mary J. Combs and the defendants the other three heirs at law; that a controversy having arisen over the construction of the last will and testament of William D. Combs, decedent's departed husband, she, then being the owner of the property herein involved, in order to settle and compromise the controversy, entered into an agreement with plaintiffs whereby they assented to a construction of William D. Combs' will, and she agreed to keep intact, during her lifetime, all property of every kind then owned by her or thereafter acquired, and that, at her death, "the same shall be equally divided among all the said parties of the second part in equal shares or proportions, except the share or portion of Effie Steber, which share or portion shall go to and become the absolute property of her two children, Frank Steber and Jean." The bill of complaint further alleges that Frank and Jean Steber transferred to the plaintiff, Effie Steber, all interest which they had in the property under the terms of the agreement; that since Mrs. Combs' death, intestate, defendants have set up a claim to an undivided one-tenth interest each in her estate, claiming to have taken the

same by inheritance, which claim is a cloud upon plaintiffs' title, and has prevented the sale or disposal of the real estate; that plaintiffs are entitled to have the defendants convey unto them the legal title to the said real estate; that since decedent's death plaintiffs have been in actual, open and exclusive possession of said real estate. The bill of complaint prays that the defendants be required to convey to plaintiffs the legal title to the real estate, and upon refusal, that the same be conveyed to them by a special commissioner so that plaintiffs' title may be quieted and settled and defendants' claim of ownership dissipated as a cloud upon title.

Defendants' answer admits most of the material allegations of the bill, but denies plaintiffs' claim of ownership. By cross-bill, incorporated as a part of the answer, defendants allege that a controversy arose among the legatees, under the will of William D. Combs, whether or not certain bequests failed because of the payment prior to testator's death by the Treasurer of the United States of certain United States Government Bonds, and in order to settle the same Mrs. Combs and plaintiffs entered into a contract February 21, 1935, purporting to settle and compromise all matters arising out of her deceased husband's will, whereby she agreed to accept $500.00 in lieu of a legacy of a $1,000.00 Third Liberty bond; the plaintiff, Helen Combs, agreed to accept $2,000.00 in lieu of a $4,000.00 bequest, and $2,500.00, being one-half of the Mary J. Combs and Helen Combs legacies, was to be paid to the attorneys for the plaintiffs, Oscar F. Combs, Roy D. Combs, Lucy Best and Effie Steber.

The part of the answer in the nature of a cross-bill further alleges that Mrs. Combs died, intestate, on April 7, 1936, and plaintiff, Fred E. Combs, was appointed administrator of her estate; that the settlement of the estate was referred to a commissioner of accounts, who, on November 11, 1936, filed a report charging the administrator with the receipt of $8,702.10, exclusive of certain other smaller sums of money and items of personal property, and credited him with disbursements for funeral

expenses, debts, taxes and fees in the amount of $810.51, and the distribution of $250.00 to Effie Steber, and $500.00 each to the plaintiffs, Oscar F. Combs, Lucy Best, Roy D. Combs, Fred E. Combs, L. Donvan Combs, and Helen Combs; that the defendants understood from the administrator their respective shares in personalty would amount to around $800.00 each; that not until November 9, 1936, when all interested parties, except Helen Combs, met in the office of the commissioner of accounts, did defendants learn of plaintiffs' claim to all of the estate of Mary J. Combs, under said contract of February 23, 1935; that defendants are informed and believe, and so allege, the commissioner of accounts, before whom such settlement was made, undertook to so find, and reported accordingly; that the second settlement, in September, 1937, shows the sum of $885.09 had been distributed among plaintiffs by the administrator; that said second report does not disclose what disposition, if any, the said administrator "had made of a balance of more than $4600.00 remaining in his hands at the time he made his first settlement as said administrator"; that the contract of February 23, 1935, is without any consideration whatever, and had no binding force or effect upon said Mary J. Combs, and did not in any way or to any extent dispose of any property she then owned, and did not exclude defendants from sharing in any property she might own at her death; that the property upon her death passed by descent to all parties to the instant suit, one-tenth to each of them; and that defendants are entitled to partition of real estate, and for an accounting in respect of the personal property of the Mary J. Combs estate. Defendants pray, among other things, that the administrator be required to account for all personalty of whatever nature, coming into his hands as such administrator, including the said $4,600.00 which they alleged was shown by the settlements to remain in his hands; that partition be made of said estate, both real and personal, and for general relief.

In the main, this case involves an appraisal of the writ-

ing dated February 23, 1935, viewed in connection with the purported contract of February 21, 1935. In this connection, it must be borne in mind that Mrs. Combs, as well as both plaintiffs and defendants, were beneficiaries under the William D. Combs will. The writing of February 23, 1935, provides that Mrs. Combs shall make no disposition of her property and if she does it shall not inure to the benefit of one or more of the plaintiffs as against the others. "Operative words manifesting intent to transfer the property are absolutely essential to the conveyance of title. The intent must be disclosed by the words of the deed not the mere acts of the parties." Pt. 9, Syl., *Freudenberger Oil Co.* v. *Simmons, et als.,* 75 W. Va. 337, 338, 83 S. E. 995, 996, Ann. Cas. 1918A 873. Accord: *State* v. *Morris, et al.,* 81 W. Va. 732, 95 S. E. 197. It follows said writing did not operate to pass and vest title, nor did it create a gift *inter vivos* or *causa mortis.* Decedent, at the time of its execution, was under no apprehension of death, and there was no delivery or surrender of control. Consequently, there could be no gift *causa mortis. Johnson* v. *Colley,* 101 Va. 414, 44 S. E. 721, 99 Am. St. Rep. 884; *E. M. Meadows Funeral Home* v. *Hinton,* 119 W. Va. 609, 613, 195 S. E. 346; *Waugh* v. *Richardson,* 107 W. Va. 43, 147 S. E. 17; *Claytor* v. *Pierson,* 55 W. Va. 167. 172, 46 S. E. 935. And the record does not disclose a gift *inter vivos.* "It is essential to a gift that it goes into effect at once and completely. If it regards the future it is but a promise; and being a promise without consideration it cannot be enforced, and has no legal validity." Pt. 1. Syl., *Hogue et al.* v. *Bierne,* 4 W. Va. 658. See also: *Banner Window Glass Co.* v. *Barriat,* 85 W. Va. 750, 102 S. E. 726; *Yancey* v. *Field,* 85 Va. 756, 8 S. E. 721; *Sterling* v. *Wilkinson,* 83 Va. 791, 3 S. E. 533; Thornton on Gifts and Advancements, sections 76 and 78.

So, this case, as we view the record, narrows itself down primarily to the simple question whether the writing constituted a valid contract based upon a valuable consideration. If such is the case, it would vest in plaintiffs an equitable title to the property at decedent's death. By

equitable title is meant here simply that the holders thereof have in a court of equity an equitable chose in action to compel the holders of the legal title to convey. It follows the solution of this case lies in the query whether or not there was in fact the settlement of a controversy sufficient to constitute a valuable consideration. In *Rutherford* v. *Rutherford,* 55 W. Va. 56, 47 S. E. 240, Pt. 2, Syl., this court said: "A compromise of a controversy is a valuable consideration to sustain a contract." See also, *Davidson* v. *Davidson,* 72 W. Va. 747, 79 S. E. 998; *Billingsley* v. *Clelland,* 41 W. Va. 234, 23 S. E. 812, Pt. 1, Syl.; *Davisson* v. *Ford,* 23 W. Va. 617, Pts. 3 and 4, Syl.

Did the writing in question contemplate a compromise such as would in fact sustain a promise of Mary J. Combs not to dispose of her property to the detriment of the plaintiffs or any of them? If in fact no controversy existed, the settlement of which would inure to her benefit, it cannot be said that the recitals in the writing as to the existence of a controversy are sufficient to constitute consideration. The settlement of a controversy is a valid consideration only where the controversy has some foundation in fact. "But if there is no foundation for such claim of liability", said this court in Point 4, Syl., *Davisson* v. *Ford, supra,* "then the promise made to settle this assumed liability has no sufficient consideration to sustain it and no suit can be based on such promise." Here, the writing simply recited that the alleged promise was made in consideration of the settlement of a controversy growing out of the William D. Combs estate. There is no recital as to the nature of this claimed controversy. If there was such a controversy, the nature of it certainly does not appear, directly or inferentially, either in the bill of complaint or in the claimed contract of February 23, 1935. And, of course, the purported contract of February 21, 1935, must not be overlooked. That paper also recited that it was made to effect a compromise of all matters arising under the will of William D. Combs. By it, Mary J. Combs agreed to accept $500.00 in lieu of a legacy of a $1,000.00 U. S. Government bond, and the

plaintiff, Helen Combs, agreed to take $2,000.00 in lieu of a $4,000.00 legacy, and the remaining $2,500.00 was to be divided among four of the plaintiffs. From paragraph three of the affirmative part of the answer, it appears that this writing was entered into because the Treasurer of the United States Government had called in and paid off certain U. S. Government bonds owned by William D. Combs, causing the question to arise among the legatees as to whether or not some of the bequests in the William D. Combs will had failed. So, it seems that by the two papers, taken together, Mrs. Combs, instead of receiving a benefit, sustained a detriment. We are, therefore, at a loss to see how it can be safely said that her promise not to dispose of her property was predicated upon any valuable consideration. Generally, the sustaining of a detriment by the promisor to an executory contract is no consideration. A detriment to constitute a consideration must be suffered by the promisee. 12 Am. Jur., Contracts, sec. 79; *Tabler, Rec'r. v. Hoult,* 110 W. Va. 542, 158 S. E. 782. Under these circumstances, we think that the writing of February 23, 1935, was abortive and insufficient to sustain the trial chancellor's decree.

Though the circuit court sustained the demurrer to the part of defendants' answer in the nature of a cross-bill, this pleading remains, and necessarily so, in the record for the purposes of this appeal. In it the defendants charge the administrator of Mary J. Combs' estate with the failure to account for her personal property and pray for an accounting. Surely it presents a judicial question. The question is the same which was presented in the circuit court and is also under consideration here as to decedent's real estate. Under West Virginia Constitution, Article VIII, Section 24, the power to adjudicate judicial questions is withheld from the probate court. This section confers jurisdiction upon county courts "in all matters of probate, the appointment and qualification of personal representatives, guardians, committees, curators, * * *", and further authorizes them to "exercise such other powers, and perform such other duties, *not of a*

*judicial nature,* as may be prescribed by law." (Italics supplied). Such was the decision of this court in *Hawley* v. *Falland, et al.,* 118 W. Va. 59, 188 S. E. 759. See also, *Hansbarger, Admr.* v. *Spangler,* 117 W. Va. 373, 185 S. E. 550; *Davis, Committee* v. *See et al.,* 119 W. Va. 490, 194 S. E. 271. It follows that this case should be remanded to the circuit court to be dealt with in a manner not inconsistent with this opinion.

Again it must be said, as suggested in the cases of *Young* v. *Hodges et al.* 121 W. Va. 280, 3 S. E. (2d) 219, and *Shew et al.* v. *Prince, Admr., etc.,* 119 W. Va. 524, 194 S. E. 345, that a lawyer should not accept employment in the same case in which he has acted as commissioner of accounts. In the instant case, the institution of this suit in the circuit court by the attorney who, in the settlement of the Mary J. Combs estate, acted as commissioner of accounts, while not justified by this record and the instant decision, does not in the least reflect upon his high character and professional integrity. If this decision as to the personal property had been otherwise, which it could not have been under the constitution of this state, the employment would have been entirely justified.

For the foregoing reasons, we reverse the decree of the circuit court and remand this cause for further proceedings.

*Reversed and remanded.*