# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**In re: Estate of Anna Louise Herndon,**

No. 20-0005 (Logan County CC-23-2019-AA-1)

**FILED**

**March 23, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Brothers Clifton R. Herndon and David Herndon, petitioners below and herein, by counsel Robert B. Kuenzel, appeal the December 9, 2019, order of the Circuit Court of Logan County that denied their motions under Rule 59(a) of the West Virginia Rules of Civil Procedure to take additional evidence and to alter the circuit court's judgment order. Regina Herndon Vance, respondent below and herein, who is petitioners' sister and the executor of the parties' mother's estate, by counsel K. Brian Adkins, responds in support of the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

The parties' mother, Anna Louise Herndon ("decedent"), was diagnosed with cancer in November of 2016. On June 3, 2017, decedent learned that her cancer had progressed. Soon thereafter, decedent spoke with her daughter, respondent Regina Herndon Vance, about cash gifts she wished to give to certain people and to a school. On June 23, 2017, eleven days before her death, decedent signed a "note" written by respondent in which decedent directed that the following cash gifts, totaling $147,000.00, be made: $4,000.00 to "Randall Dental"; $8,000.00 to decedent's granddaughter; $50,000.00 to "Beth Haven Christian School" where decedent served as principal; $1,000.00 to decedent's pastor and his wife; and $28,000.00 to each of decedent's three children, i.e., respondent and petitioners. Written below this list of gifts was the following statement: "I wish for the above cash to be given out as listed. /s/ Anna L. Herndon June 23, 2017." Soon thereafter decedent delivered the $147,000.00 in cash to respondent for the gifts. Decedent died testate on July 4, 2017.

Decedent's last will and testament appointed respondent as the executrix of her estate. Petitioners claim decedent's will provided that her probate assets were to be divided evenly between respondent and petitioners. Respondent highlights that petitioners' statement is false because decedent actually devised and bequeathed her house and everything in it to respondent, and then devised the remainder of the estate equally between respondent and petitioners.

1

Respondent, as her mother's executrix, filed a probate appraisement in Logan County on July 14, 2017. On August 16, 2017, petitioners filed a motion to compel respondent to file an amended appraisement with the clerk of the county commission in accordance with West Virginia Code § 44-1-14(b) because the $147,000.00 was not included in respondent's initial appraisement. The county commission appointed a fiduciary commissioner to conduct a hearing and to make recommendations to the county commission. On February 9, 2018, respondent filed an objection to petitioners' motion claiming that the probate appraisement was proper. The fiduciary commissioner conducted a hearing on March 22, 2018, at which respondent testified as follows:

*Question*: At the time of [decedent's] death you still had $147,000.00 of your Mom's money?

*Respondent*: It was not her money at the time. She had already given it to me.

*Question*: You can't have it both ways. You can't say it was a gift from Mom and you are going to distribute it the way she says. Or, it is your mom's money.

*Respondent*: It is a gift from my Mom. It initially was my Mom's money and she gave it to me, which made it a gift, with directions [t]hat I plan to follow to the letter.

On January 21, 2019, the fiduciary commissioner forwarded her findings and recommendation to the parties and the county commission. The fiduciary commissioner found that: "There was no evidence of fraud or undue influence involved in the transfer of the subject [$147,000.00] from the decedent to respondent." "There is no evidence that decedent was incompetent at the time the gift was made and delivered." "[T]he decedent had divested herself of the [$147,000.00] prior to her death by having [respondent] take possession of the currency, thus the money was no longer in the control, or dominion of the decedent at the time of her death[.]" "[T]he decedent signed a writing confirming the gift and acknowledging the distribution[.]" "Decedent died within the lifetime of the donees." Based on these findings, the fiduciary commissioner concluded that

the subject $147,000.00 . . . was not personal probate property that would have been included in the Appraisement of the decedent's estate inasmuch as decedent had completely divested herself of the money prior to her death by giving it to her daughter; thus, [decedent] did not "own" the money at the time of her death. Further, the facts and evidence presented illustrate that the delivery of the money to [respondent] was intended to be a *causa mortis* gift.

Accordingly, the fiduciary commissioner recommended that the county commission deny petitioners' motion to compel the executrix to file an amended appraisement that included the $147,000.00

On February 6, 2019, petitioners filed an objection to the fiduciary commissioner's findings and recommendation with the county commission. On February 19, 2019, the county

2

commission denied petitioners' motion to compel an amendment to respondent's appraisement of decedent's estate finding that: (1) the $147,000.00 was not personal probate property given that decedent divested herself of it before her death; and (2) decedent's "note" in combination with the undisputed testimony before the fiduciary commissioner provided clear and convincing evidence in support of the finding that the $147,000.00 was a valid *causa mortis* gift.

Petitioners appealed the county commission's decision to the circuit court under West Virginia Code § 44-3A-21 ("Exceptions to fiduciary supervisor's or fiduciary commission's report; return of report"). Petitioners also filed a motion to stay the proceedings and any disbursement from decedent's estate until their appeal was resolved. Following a hearing, the circuit court granted petitioners' motion for a stay of the final distribution of cash proceeds from decedent's estate. Thereafter, and following yet another hearing, the circuit court denied petitioners' appeal by order entered August 27, 2019.

On August 28, 2019, petitioners responded with (1) a motion under Rule 59(a) of the West Virginia Rules of Civil Procedure to alter the judgment order that denied their petition for appeal, and (2) a motion to stay the circuit court's order remanding the matter to the county commission for final settlement and distribution of decedent's estate. On August 30, 2019, petitioners filed a motion to open judgment and to take additional testimony under Rule 59(a). The circuit court granted that motion. Following a November 18, 2019, hearing on petitioners' post-judgment motions, the circuit court, by order entered December 9, 2019, denied those motions on the ground that petitioners presented no new information or points of law that would cause the court to take additional evidence or alter its judgment order. Petitioners now appeal.

"'This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo*.' Syllabus Point 4, *Burgess v. Porterfield*, 196 W.Va. 178, 469 S.E.2d 114 (1996)." Syl. Pt. 1, *Haines v. Kimble*, 221 W. Va. 266, 654 S.E.2d 588 (2007).

Petitioners raise two assignments of error on appeal. Petitioners first argue that the circuit court erred in upholding the county commission's order that found decedent's transfer of the $147,000.00 to respondent shortly before decedent's death was a gift *causa mortis*. Petitioners contend that the "note" is contrary to decedent's last will and testament, which provided that her estate was to be distributed equally between the parties to the exclusion of all other persons. Essentially, petitioners argue that if decedent made a monetary gift that was to be disbursed after her death, then it was a testamentary gift subject to probate filings and distribution in accordance with the decedent's will. Further, petitioners contend that the county commission's findings were contrary to both law and the evidence.

This Court has long recognized the definition of a "gift *causa mortis*":

> To constitute a valid gift *causa mortis,* it is essential, that the donor should make it in contemplation of death, either in his last illness, or while he is in other imminent peril, and that his death should result from such illness or peril. The donor must part with all dominion over it, so that no further act of him or of his personal representative is necessary to vest the title perfectly in the donee, to belong to him

presently as his own property in case the donor should die of his present illness or from the impending peril, without making any change in relation to the gift, leaving the donee surviving him.

Syl. Pt. 2, *Dickeschied v. Exch. Bank*, 28 W. Va. 340 (1886). We recognized in *Dickeschied* that a gift *causa mortis* could be completed by delivering the gifted property to an intermediary, who is charged with making delivery to the donee:

> There must be a delivery of the property to the donee*, or to some other person for his use*. The donor must part with all dominion over it, so that no further act of him, or of his personal representative is necessary to vest the title perfectly in the donee; to belong to him presently, as his own property in case the owner should die of his present illness, or from the impending peril, during the lifetime of the donee, and without making any change in relation to the gift.

*Id.* at 360 (emphasis added).

West Virginia's personal property gift statute, West Virginia Code § 36-1-5, similarly provides, in part, that gifted property may be delivered to an intermediary: "[n]o gift of any goods or chattels shall be valid unless made by writing, signed by the donor or his agent, or by will, or unless actual possession shall have come to and remained with the donee *or some person holding for or under him*." (Emphasis added).

This Court's decision in *E.M. Meadows Funeral Home v. Hinton*, 119 W. Va. 609, 195 S.E. 346 (1938) ("*Meadows*"), is directly on point. In Syllabus Point 2 of that case, we reiterated the rule that gifted property may be delivered to an intermediary: "Delivery of the subject-matter of a gift to the donee, *or his agent*, during donor's lifetime, is essential to every gift *causa mortis*." 119 W. Va. at 609, 195 S.E. at 346 (emphasis added). Moreover, in Syllabus Point 3 of *Meadows*, we held that,

> [w]here, in periculo mortis, a donor delivers the subject-matter of a gift to a third person with the intention that after donor's death it will be delivered to a named donee, such person, in the absence of countervailing circumstances, will be presumed to be donee's agent, and the fact that actual delivery to the donee is not made until after donor's death will not defeat the gift.

*Id.* In *Meadows*, the decedent was taken to a hospital where she told her sister-in-law that, if anything happened to her, she wanted her relative "Vera" to have her ring. Decedent's sister-in-law gave the ring to her husband, C.M. Hinton, who was both decedent's brother and the administrator of decedent's estate. The sister-in-law told her husband about decedent's wishes regarding the ring. Thereafter, decedent died, and decedent's brother sent the ring to Vera. Regarding the ring, the *Meadows* Court said,

> Although delivery to the donee, or his agent, during donor's lifetime, is indispensable to a gift causa mortis (*Waugh v. Richardson*, 107 W.Va. 43, 147 S.E. 17; *Claytor v. Pierson*, 55 W.Va. 167, 172, 46 S.E. 935; *Smith v. Zumbro*, 41 W.Va.

4

623, 24 S.E. 653; *Board v. Callihan*, 33 W.Va. 209, 10 S.E. 382; *Dickeschied v. Exchange Bank*, 28 W.Va. 340; *Miller v. Jeffress*, 4 Grat. 472, 45 Va. 472), the fact that Miss Hinton died prior to the actual delivery of the ring to the donee did not defeat the gift, for the law will presume, in the absence of countervailing circumstances, that Hinton received the same as the donee's agent. . . . It thus appears that all the elements of a gift causa mortis are present. *Dickeschied v. Exchange Bank*, *supra*; *Waugh v. Richardson*, *supra*.

Such gifts, in the absence of fraud and undue influence, are perfectly valid, provided the rights of creditors are not affected.

119 W. Va. at 613-14, 195 S.E. at 347-48 (citations omitted). Under *Meadows*, there is a presumption that a third person to whom the gift was delivered (respondent in the instant case), is the agent of the donee. Here, respondent was both the donees' agent and one of the seven donees of decedent's *causa mortis* cash gifts. Also, in the instant case, there is no evidence of fraud or duress and no outstanding claims against decedent's estate.

The record supports the county commission's conclusion that the $147,000.00 was a valid gift *causa mortis* and, therefore, not a personal probate asset of decedent's estate. West Virginia Code § 44-1-14 provides that a personal representative of an estate has the duty to appraise the deceased's real estate and personal probate property, or any real estate or personal probate property in which the deceased person had an interest at the time of his or her death. It is undisputed that decedent delivered the $147,000.00 to respondent prior to decedent's death. Therefore, decedent had no interest in the $147,000.00 at the time of her death. Accordingly, the county commission's findings and conclusions as recommended by the fiduciary commissioner were not clearly erroneous, and the circuit court did not err in affirming those findings and conclusions.

In petitioners' second assignment of error, they ask the Court to revisit *Dickeschied* and *Meadows*, claiming that the holdings in those cases are inconsistent on the issue of the transfer of a gift from an agent to a donee. In support, petitioners cite to Syllabus Point 9 of *Dickeschied*, which provides:

If such actual delivery to the donee [does] not take place during the lifetime of the donor, the authority of such third person to deliver the gift is revoked by the donor's death; the property does not pass to the donee but remains in the donor, and goes to his executor or administrator.

28 W. Va. at 341. Petitioners counter by citing to Syllabus Point 3 of *Meadows*, which, as we noted above, provides that where

a donor delivers the subject-matter of a gift to a third person with the intention that after donor's death it will be delivered to a named donee, such person, in the absence of countervailing circumstances, will be presumed to be donee's agent, and the fact that actual delivery to the donee is not made until after donor's death will not defeat the gift.

5

119 W. Va. at 609, 195 S.E. at 346. Petitioners contend that there is an inconsistency as to whether a *causa mortis* gift to a donee vests after transfer from the donor to an agent where the donor dies before the gift is received by the donee. Petitioners ask the Court to resolve these alleged inconsistencies by holding that, if an actual gift *causa mortis* is not made to the donee prior to the donor's death, then the gift fails, and the property is to be administered in the donor's estate.

We reject petitioners' argument because our holdings *Dickeschied* and *Meadows* are not inconsistent. Instead, the law in those cases is simply applied to factually inapposite cases. We therefore reject petitioners' second assignment of error.

Accordingly, for the foregoing reasons, we affirm the circuit court's December 9, 2019, order denying petitioners' post-judgment motions.

Affirmed.

**ISSUED:** March 23, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton